DANIEL L. THOMAS' ADMINISTRATORS *vs.* B. J. VON-KAPFF'S EXECUTORS.—*December*, 1834.

In a mortgage of real property given to secure the repayment of $20,000, borrowed money, T, the mortgagor, covenanted that he would at all times, during the existence of the lien hereby created, at his own proper cost and charge, cause and procure, the insurance against loss by fire already effected on the mortgaged premises to amount of $19,000, to be kept up and renewed; and that in case of loss, the sum insured shall be immediately applied to rebuilding, replacing and putting the said property and premises in the like good order and condition that the same now are in, so that the said V, (the mortgagee) his heirs, &c. shall in case of loss by fire be benefitted by such insurance, or participate in the benefit thereof, to the extent of his aforesaid lien."—Upon the construction of this contract, IT WAS HELD,

1. That the parties evidently looked to the estate mortgaged, if it remained without deterioration, as sufficient to satisfy the debt which it was taken to secure.

2. That the design of this covenant was by the insurance, always to have a fund for re-establishing the premises, so that the security should not be in any manner diminished.

Thomas' Adm'rs *vs.* Vonkapff's Ex'rs.—1834.

3. The insurance was one for the benefit of the mortgagee, to the extent of his lien. He was not entitled to the money, but to have it applied to the rebuilding of the premises in the like good order in which they were at the time of the contract, and such an application of the money would be coerced in equity, which would consider the mortgagor, if he received the insurance money, as a trustee for that object.

4. That as the mortgaged property was clothed with a trust in reference to this fund, the legal representatives of the mortgagor must also take it subject to the trust.

Where property was mortgaged to secure a certain sum of money, and afterwards the improvements on it being destroyed by fire, was sold and did not pay the mortgaged debt; and the mortgagee then applied to a court of equity to enforce a covenant in the mortgage to keep the property insured, and apply the proceeds of the policy to rebuilding it, claiming under that covenant, a lien upon the insurance money, and payment of the balance due him out of it—HELD, that although equity could not administer the relief in the terms stipulated for, as the property was sold, and rendered rebuilding by the mortgagor or his representatives impossible, yet still the creditor was entitled to be paid out of this fund, over which he had a qualified lien, in preference to the general creditors of the debtor or his representatives.

Covenants to repair and rebuild on the land, are covenants running with the land; and so is a covenant to effect insurance and apply the proceeds in case of loss by fire, to the reparation of the insured property.

When a party is entitled to relief in equity, but from some cause it cannot be obtained in the *mode* stipulated for between the parties, chancery will still grant relief, though in some other form than the one agreed upon.

APPEAL from the equity side of *Baltimore* county court. The appellees on the 30th of November, 1831, exhibited their bill in *Baltimore* county court, against the appellants, praying that the sum of $10,000, which had been deposited by the intestate of the appellants, in the *Maryland Savings Institution*, might be paid to them. The bill alleged, that the plaintiffs' testator, had loaned to the defendants' intestate the sum of $20,000, and as a security for the repayment of the same, with interest, the latter had executed to the former a mortgage dated July 6th, 1827, on a certain lot and improvements in the city of *Baltimore*. That the mortgage contained a covenant, that the mortgagor, or his representatives, would at all times, during the continuance of the lien,

Thomas' Adm'rs *vs.* Vonkapff's Ex'rs.—1834.

procure the insurance against loss by fire, then effected on said improvements, &c., to the amount of $19,000, to be renewed, and that in case of loss, the sum insured should be immediately applied to rebuilding the premises, &c.   That in the winter of 1830, the most valuable of the improvements on said lot were destroyed by fire, at which time the insurance amounted to $10,000, and that the same was subsequently paid by the insurance office, to the mortgagor. That the said mortgagor deposited the money in the *Maryland Savings Institution*, until he could decide whether he would apply it to rebuilding the premises, or to the extinguishment in part of the mortgage debt, and that it remained on deposite until the period of his death.   That after ascertaining that the administrators of the mortgagor were unwilling to apply this money to the extinguishment of the mortgage, the complainants filed a bill, and obtained a decree for the sale of the premises, which, owing to the injury done to them by the fire, produced the net sum of but $8,225 69, so that the aforesaid $10,000 will not satisfy the residue of the morgage debt.

The answer, after admitting the allegations of the bill, presented to the court the question, whether the complainants in virtue of the mortgage, held a specific lien on the fund in question, or whether the same should not be distributed equally among the creditors of the mortgagor, who the defendants alleged, died insolvent.

Among the exhibits filed by the complainants, was the following paper signed by *Thomas*, addressed to and left with the treasurer of the *Maryland Savings Institution*, at the time of making the deposite.

"April 27th, 1830, I wish to deposite in the *Maryland Savings Institution*, a check of the *Firemen's Insurance Company*, for $10,000, and to receive for this sum, a certificate bearing interest at four per cent. It is my intention, this sum should remain in your institution until I can decide upon whether I shall have to use it for the rebuilding of my sugar refinery establishment, or have to transfer the same to

the executors of the estate of *B. J. Vonkapff*, for the payment of a mortgage held by this estate on my property."

The convenants in this deed, to insure, and to rebuild, in case of loss, are recited by the learned judge who delivered the opinion of this court.

The county court (HANSON, A. J.) decreed that the complainants had a specific lien on the money so deposited in the *Savings Institution*, and that the same, with interest, at the rate of four per cent., be brought into court, to be applied to the payment of the balance of their claim.

From this decree, the defendants prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., and MARTIN, STEPHEN, and ARCHER, J's.

*Johnson*, for the appellants.

1. The appellees had no specific lien on the fund, and as the appellants' intestate died insolvent, it should have been equally distributed among his creditors. A covenant to pay in a mortgage is collateral, and does not run with the land. 8 *Taunt.* 227. 1 *Cov. Powel*, 61, *(note E.)*    Sugden 477, 481.

2. The mortgage itself, with the paper deposited with the *Savings Institution*, did not amount to a lien on the fund. If a mortgagor in his life-time, sets apart a certain sum for the payment of the mortgage debt, that does not amount to a specific appropriation of the money, so set apart for that purpose.    The object of the covenant in the mortgage, was to provide for the rebuilding of the premises, and not for the payment of the debt, and therefore, when *Thomas* received the money from the *Insurance Company*, the mortgagee could not have recovered it from him. 2 *Durnf. and East.* 211.    If the mortgagor had rebuilt with other funds, this fund would have been his, as his personal right.    It does not appear but that the $10,000 was more than adequate to to restore the property to its former state, which is every

thing the mortgagee had a right to ask; nor is there any evidence, that *Thomas* was in his life-time called on to rebuild.   If the mortgage *per se*, constituted a lien on the fund, then the mortgagee would be entitled to it, though the mortgagor should rebuild.   Suppose, notwithstanding the injury, the property had been sufficient to pay the debt, will it be pretended that the mortgagee could have insisted on the application of this money for that purpose.   The policy therefore, cannot be regarded as a substitute for the property, or in other words, the insurance money is not the primary fund for the payment of the debt.

The mortgage then did not create a lien, nor did the memorandum signed by *Thomas* when he made the deposite; as notwithstanding the memorandum, the bank could pay the money to no one but himself.   There was nothing in the declaration accompanying the deposite which made it the duty of the bank to see to the application of the money.

*McMahon*, for the appellees.

1. The mortgaged premises having been sold, the money cannot be applied to rebuilding them, and the question therefore is, how shall it be applied.   The mortgagee has the same right to the insurance money as he would have to the premises themselves.   He is the legal owner of the premises, and every thing which attaches to them, and enhances their value, also belongs to him, though acquired subsequently to the mortgage.   1 *Powel on Mortg.* 189, (*note* 2.) The mortgagor may insure to the full value of the property, as in *equity*, he is considered the owner,  subject to the charge.   His right to insure depends upon his interest, which being subject to the charge of the mortgagee, the proceeds of the policy should be applied to the payment of the charge.   The money must be applied, as the estate is to go.   2 *Madd. Rep.* 481, 482, 486.

2. The covenant to insure, makes it the duty of the mortgagor to do so, for the benefit of the mortgagee, as an additional security for his debt.   Such a covenant would hardly

be required by the mortgagee, if the mortgagor is to have the benefit of it. It could not be to create a personal responsibility on the part of the mortgagor, as that responsibility exists independently of any such covenant. A court of equity will not relieve against the consequences of the non-performance of a covenant to insure, though a forfeiture results. 19 *Ves.* 133, 143. 2 *Merrivale,* 459. 4 *Campb.* 177. A covenant to insure does run with the land. 7 *Serg. and Low.* 1. *Cov. Powel,* 187.

3. But at all events, the covenant to rebuild, gives the mortgagee a clear right to the fund, if from the default of the mortgagor, he cannot comply with his covenant. Such a covenant creates a lien, and follows the fund in the hands of the assignees. 2 *Durnf. and East.* 206, 211. 2 *Merrivale,* 511. It is in a court of Chancery, an appropriation of the money to the use of the mortgagee.

4. But if not an actual appropriation, it is an agreement to appropriate, and that in Chancery creates a trust for the benefit of the mortgagee, as against the mortgagor, and all claiming under him. 1 *Ves. Jr.* 477. 3 *Ves.* 58. 2 *Desauss,* 552. 3 *Powel on Mortg.* 1000, 1449. 2 *Ib.* 434.

5. When the money was deposited in the bank, it was dedicated by the mortgagor, either to rebuild the premises, or to the satisfaction of the mortgage debt; and as it cannot now be applied to the former object, because of the mortgagor's default, in suffering the property to be sold, it follows that it must be applied to the payment of the mortgage. 2 *Durnf. and East.* 210.

ARCHER, J., delivered the opinion of the court.

The answer admits that the buildings on the premises insured, were burned down, whereby the security of the mortgage was impaired; and that the sum of $12,000 remained due on the mortgage after the application to its discharge of the proceeds of the sale of the mortgaged premises. It is also admitted, that a decree in equity has been

passed for the sale of the mortgaged premises, and that they have in pursuance of said decree been sold, and that the proceeds of the sale have been applied towards the payment of the mortgage.

From this statement of facts it will appear, that the power of *Thomas*, or his legal representatives, to comply with the covenant, by rebuilding, is gone; the right to the property having passed from them.   Upon these admitted facts, it would seem only to be necessary to recite the covenant contained in the mortgage deed from *Thomas* to the defendants to decide the question.   That covenant is as follows.

"That the said *Daniel Thomas*, his heirs, executors, and administrators, shall and will at all times during the existence of the lien hereby created, at his and their own proper cost and charge, cause and procure the insurance against loss by fire already effected on the buildings, improvements and fixtures and utensils aforesaid, to amount of $19,000, to be kept up, continued, and renewed ; and that in case of loss, the sum insured shall be immediately applied to the rebuilding, replacing, and putting the said property and premises in the like good order and condition, that the same now are in, so that the said *Bernard J. Vonkapff*, his heirs, executors, administrators, or assigns, shall in case of loss by fire, be benefitted by such insurance, or participate in the benefit thereof, to the extent of his aforesaid lien."

The parties evidently looked to the mortgaged estate, if it remained without deterioration, as sufficient to satisfy the debt, which it was taken to secure.   It is under this belief the above covenant is entered into.   It was forseen that the security might be lessened by the calamity which actually befel it, and the design of the covenant was, by the insurance, always to have a fund for re-establishing the premises; so that the security should not be in any manner diminished; for they stipulate in case of loss by fire, that the sum insured shall immediately be applied to the rebuilding, replacing, and refitting the property, in the like good order,

that the same was in at that time; so that in case of loss by fire, the mortgagee might be benefitted by such insurance, or participate in the benefit thereof to the extent of his lien.

The insurance, then, according to the express agreement of the parties, was one for the benefit of *Vonkapff*, to the extent of his lien. He was not, it is true, entitled to the money, but he was entitled to have it applied to the rebuilding of the premises, in the like good order which they were at the time of the contract, and it cannot be questioned but that such an application of it might have been coerced. When the mortgagor received the insurance money, a court of equity would have considered him in the light of a trustee of the fund, and would have caused the whole of it, or such parts thereof as might be necessary, to restore the premises to their former situation to be expended in rebuilding. The mortgagee had undoubted rights in the fund thus arising, which could not be over-reached by *Thomas* or his creditors, and if the property was thus clothed with a trust, his legal representatives must also take it subject to the same trust.

This being so, and the restoration of the buildings by *Thomas*, or his representatives, having become impracticable; the estate having passed from them, the question to be determined is, to whom the fund arising from the insurance belongs?

Equity cannot administer relief in the terms stipulated for; that has become impossible. But shall it therefore be said, that although the insurance was taken for the benefit of the mortgagee, it shall go into the mass of the mortgagor's estate, and be distributed to his creditors generally? This would be doing great injustice to the mortgagee, who would thus be stripped of all advantages and priorities which he would otherwise have had by the contract; and the insurance money, instead of being applied in conformity with the contract, to make good the lien, would in opposition to the agreement of the parties, be a fund for the benefit of *Tho-*

*mas* and his representatives, instead of being for the benefit of the mortgagee.

The whole insurance money, added to the sale of the mortgaged premises, it appears, is not sufficient to extinguish the mortgage, or in the language of the contract, if allowed to take the whole, he will not "be benefitted to the extent of his lien." His lien will not be satisfied.

If therefore the fund of $10,000 had according to contract been expended on the premises, it would not have placed them in the same condition they were at the time of that mortgage; for the parties then considered the premises to be worth $20,000. And if the whole extent of the insurance money would not have reinstated the premises, and *Thomas* was bound to lay it out for the mortgagee's benefit, and that has become impracticable, would that not be an obvious equity, which would give him the right to the money itself, which was to be expended manifestly for his benefit solely.

If indeed, the expenditure of this amount, thus recovered, upon the premises, would have enhanced their value beyond the lien, then to the extent of such enhancement, the fund would be for the benefit of *Thomas'* representatives. And if such had appeared to have been the case, we should have considered the mortgagee as only entitled to such sum as would have brought up his security to its former standard; or in other words, only to such portion of the insurance fund, as would have satisfied his lien; the rest would have belonged to *Thomas'* representatives.

But we will examine this question in another view, which will be found to be equally conclusive of the rights of the parties.

The mortgagor as between him and the mortgagee, had in virtue of the covenant to keep up the insurance, a qualified lien on the amount of the insurance : that is, he had a right which attached itself to the fund, not a right to be sure, which could divest the mortgagor of its possession, but a right, which would cling to the fund until it was expended

for his benefit,) to the extent of his lien under the mortgage. The mortgagor in his life-time could never have diverted this fund from its destined object. It would pass to his administrators, clogged with the same qualified equitable lien, with which it was encompassed in the mortgagor's life-time. If indeed this fund had been passed over by the mortgagor, for a valuable consideration without notice, to a third person, such third person's right would prevail, because he would have an equity also; and having the possession, he would be protected therein. For as the court of *King's Bench* say, in 2 *T. R.* 210, the title of him who hath both a fair possession, and an equitable title, shall be preferred to that of a mere equitable interest. But here, the administrators have a mere naked legal right, subject to the mortgagee's equity. That the administrators represent the creditors, cannot change the character of this equity of the mortgagee, or weaken its efficacy. The particular creditor, and the general creditor, stand in different attitudes. The former never trusted to the personal credit of the mortgagor, but trusted and looked to this particular fund, to satisfy his debt or give him security for it. The general creditors trusted to a personal credit alone. What has produced this fund? The advance of money upon its faith. Now if it be abstracted to the extent of the money advanced, the general creditors can have no right to complain, for their debtor is precisely in the same situation as if the money had never been advanced, and consequently the insurance effected. But again, the covenant is expressly for the benefit of the particular creditor, not for the benefit of the general creditors, and if they participate in it, they get that which they never could have looked to, and the extent to which they derive advantage from it, to the same extent, do they take from that creditor who looked exclusively to it. In this aspect of the case, there is another view against the pretensions of the general creditors. That this is a covenant running with the land, can, we think, scarcely be doubted. The covenants to

repair and rebuild are admittedly so. And what is this, but in effect a modified covenant to repair and rebuild? The insurance is to be kept up, so that in case of loss by fire, the sum insured shall be immediately applied to rebuilding the property on the premises. Being of this character, it would run with the land, just as would an ordinary and absolute covenant to repair or rebuild; and running with the land, the record of the mortgage would be notice to all the general creditors, and they would, therefore, have no just pretensions to participate in the fund, to the prejudice of the particular creditor.

We have said that although a lien existed, it gave no right to the possession of the fund, as against *Thomas;* the design being to apply it for the purpose of reinstating the premises. But the facts show that the lien cannot in the terms of the contract be specifically enforced, owing to the sale of the mortgaged premises. A court of equity, however, is not on this account powerless. It must administer relief, in the only manner in which it can now be done. As the leading object in effecting the insurance, was exclusively a beneficial one to the mortgagee, its great spirit and object will be effectuated by decreing him the fund. The mode only, of giving relief, will be changed, and that has become inevitable.

We have not considered it necessary to express any opinion on the legal effect of the declaration of *Thomas* accompanying the deposite of the money, as the cause is settled by the above considerations.

**DECREEE AFFIRMED WITH COSTS,**