JAMES GIDDINGS *vs*. WILLIAM R. SEEVERS AND AUGUSTUS F. SEEVERS.

The firm of S. & H. having purchased of J. G. certain machinery in the "Valley Factory," on credit, gave their notes for the purchase money, to secure which, they executed on the 31st of March, 1851, a deed of trust to W. T. D., in which they agreed to insure the said property to the amount of the debts secured by the deed. The insurance was accordingly effected and all debts secured by the deed paid, except two notes to Giddings, one for $2,000 and the other for $1,124. On the 15th of Jan., 1852, M. A. D. became a member of the firm, thereafter styled S. H. & Co., with full knowledge of the deed of trust and recognizing its binding effect upon the new firm. On the 19th of Nov., 1852, the property was destroyed by fire. On the 20th of Nov., 1852, M. A. D. in the name of the firm assigned the policies of insurance then in force to A. F. S. & W. R. S. to secure the payment of two notes, neither of which was then due, one for cotton purchased by the firm of S. H. & Co., from A. F. S. & W. R. S., and the other for a note endorsed by the latter for a commission and afterwards paid by them. On the 2nd of Dec. S. & H. jointly assigned the money due on the policies to W. T. D., trustee as aforesaid, for the benefit of J. G., describing themselves as the acting partners of S. H. & Co. In an action of assumpsit by W. R. S. & A. F. S., against J. G., submitted on the above facts, HELD :

1st. That the agreement contained in the deed of trust to insure for the benefit of J. G., secured to him the proceeds of any insurance when effected, and when M. A. D. became a member of the firm with full knowledge of the agreement and obligation to insure for the benefit of J. G., any insurance effected by the new firm was equally affected by the lien of J. G., and M. A. D. could not divert it from this purpose.

2nd. That W. R. S. & A. F. S. as general creditors, trusted to the personal credit of the firm alone, J. G. relying also on the security of the insurance, and if the assignment of the insurance to them were sanctioned they would derive advantage from a fund to which they did not look, and J. G. would be deprived to that extent of that on which he specially relied.

APPEAL from the Superior Court of Baltimore City.

This was an action of *assumpsit*, instituted by consent in the Superior Court of Baltimore City, to determine the respective claims of the appellant and appellees to a sum of money, the proceeds of two policies of insurance, effected on property which was consumed by fire.

*Exception.*—At the trial of the cause, after the facts

stated in the opinion of this Court, had been given in evidence to the jury, the plaintiffs offered the three following prayers :

*Plaintiffs' 1st Prayer.*—If the jury shall find from the evidence that Ira Stanbrough, John R. Holliday, and Mark A. Duke were partners, carrying on the Valley Factory at Harper's Ferry, Virginia, under the firm of Stanbrough, Holliday & Co., on the 20th of January, 1852, and that they did on that day effect the insurances for one year on the movable machinery in said mill, of one thousand dollars each, testified to by the witness, Robert M. Proud, and that the property insured was destroyed by fire on the 19th of November, 1852, and immediately thereafter the interest of the said firm under the insurances aforesaid was assigned by the orders offered in evidence to the plaintiffs to secure the payment of the notes of $282, and $1,253.94 respectively, that have been offered in evidence, and that said notes were given by the said firm in the course of its business, and that notice of such assignment was forthwith given to the insurers, then the verdict must be for the plaintiffs under the agreement in this cause, even though the jury should believe that there had been a prior partnership between the said Ira Stanbrough and John R. Holliday, under the firm of Stanbrough & Holliday, by which a deed of trust had been executed to William F. Daugherty on the 21st of March, 1851, to secure the indebtedness to the defendant therein mentioned, and providing for the insurance to the amount thereof, of the property therein described, and stipulating that in default in the insurance of the said property, the said Daugherty should execute the trust under said deed according to the laws of Virginia, in such case made and provided, and which insurance had been effected under the policy for $5,000, offered in evidence, which expired on the

13th of October 1852, and was renewed by the said Daugh-erty or the defendant;—and even though the jury should believe that at the 2d of December, 1852, the said firm of Stanbrough, Holliday & Company assigned its interest under said insurances of $1,000 each, (of which assignment notice was given to the insurers on the 18th of January, 1853,) to secure the indebtedness mentioned in the deed of trust aforesaid, and even though the jury shall believe that the said Mark A. Duke asserted to the assumption by the firm of Stanbrough, Holliday & Company, of the indebted-ness to the firm of Stanbrough & Holliday to the de-fendant.

*Plaintiffs' 2nd Prayer.*—That if the jury believe from the evidence that Stanbrough & Holliday were partners as set forth in the plaintiffs' first prayer, and that Mark A. Duke subsequently became a partner with them under the new firm of Stanbrough, Holliday & Company, in carry-ing on the same business as the old firm, and that articles of co-partnership in writing were entered into between the members of the new firm as testified by the witness, John R. Holliday, on or about the 1st of January, 1852, and that the subject of the assumption of the liabilities to the defendant of the old by the new firm, was spoken of among the members of the latter, at and before the execution of said articles, then in the absence of any thing in said articles on the subject of such assumption, oral testimony is inadmissible to prove the same to have been one of the considerations of the new partnership.

*Plaintiffs' 3rd Prayer.*—That if the jury should believe from the evidence that such assumption was in fact agreed upon after the formation of the partnership, it cannot preju-dice the plaintiffs in the absence, should the jury find such absence, of any consideration to be proved to and found by the jury moving from defendants to the said new firm.

And that the payment of any of the notes due to said defendant and mentioned in the plaintiffs' first prayer, were with the assent of Mark A. Duke, is not sufficient to create a binding obligation on the new firm to pay the whole or any of said notes remaining unpaid.

And the defendant prayed the Court to instruct the jury as follows :

*Defendant's 1st Prayer.*—If the jury shall find from the evidence that James Giddings, the defendant, was the owner of the cotton machinery referred to in the evidence, and that he sold and delivered the same to Stanbrough & Holliday upon a credit, and that in order to secure the payment of the purchase money, they executed to William F. Daugherty, the deed of trust, dated 31st of March, 1851, offered in evidence by the defendant, and that they afterwards took into business with them Mark A. Duke, and transacted their business under the firm of Stanbrough, Holliday & Company, and that said firm agreed among themselves with the knowledge and assent of the defendant, Giddings, that they would take the said cotton machinery subject to its liabilities to Giddings, under said deed of trust, and would pay the debt therefor to the said Giddings, and did in fact pay part thereof, and that the said Stanbrough, Holliday & Company did then insure the said property which was afterwards, to wit : on the 19th of November, 1851, destroyed by fire, and the insurance companies made liable therefor, then by the true construction of the said deed of trust, and the facts so found by them as above, the defendant Giddings is entitled to said insurance money, and under the agreement in this cause their verdict must be for him notwithstanding they may also find that subsequent to said loss by fire, the said Stanbrough, Holliday & Co. executed and delivered to the plaintiffs the papers offered in evidence by the plaintiffs, designated as assignments Nos. 1, 2, and 3.

*Defendant's 2nd Prayer.*—If the jury shall find the facts stated in the defendant's first prayer, and shall also find that on the second day of December, 1851, the firm of Stanbrough, Holliday & Co. executed and delivered to William F. Daugherty, the assignment offered in evidence by the defendant, which was certified to said insurance company on the 19th of January, 1853, then the plaintiffs are not entitled to recover.

Whereupon the Court (Lee, J.,) granted the plaintiffs' prayers, and refused to grant the defendant's prayers, to which granting of the plaintiffs' prayers and refusal to grant the defendant's prayers, the defendant excepted, and the verdict and judgment being for the plaintiffs, appealed.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough, and Weisel, J.

*George W. Dobbin* and *George L. Dobbin* for the appellant.

The appellant, the defendant below, now maintains that by the true construction of the deed of trust from Stanbrough & Holliday, to Daugherty, the insurance to be made by the former was for the benefit of Giddings, the appellant, and gave to him a lien on the proceeds of the insurance ; and that when Duke was introduced into the firm with knowledge of this obligation to insure for the benefit of Giddings, he became as much bound to the duty of insuring, and the proceeds of such insurance as much subject to Giddings' lien, as in the case of the firm of Stanbrough & Holliday.

That it was not within the competency of either the old firm, or the new, to assign the proceeds of insurance to any general creditors of the old or the new firm, to the prejudice of Giddings' lien, who was a particular creditor, having a lien upon the fund.

In support of these propositions, reliance will be placed on the case of *Thomas' Admrs. vs. Von Kapff's Executors*, 6 *G. & J.*, 372, which it will be contended decides all the principles involved in this case.

That Seevers was not a purchaser for a valuable consideration. See *Jones vs. Hardesty*, 10 *G. & J.*, 410, and p. 378 of the case above referred to, in 6 *G. & J.*

*John H. B. Latrobe* and *J. J. Snyder* for the appellees.

The articles of co-partnership of the new firm make no mention whatever of any antecedent firm, or any of its liabilities or obligations. On such proof as this, the trustee of the old firm could have no claim, legal or equitable, to the insurance of the new firm. Hence the introduction of Mr. Holliday's testimony is fairly questionable on several grounds :

1. If there was the prior consultation and explanations with Duke, of which the witness speaks, the written agreement subsequently entered into, must be taken as the ultimate conclusion of the parties, to the exclusion of all that may have gone before which is not mentioned in it.

2. If the agreement, the articles of co-partnership, was entered into first, and the consultations and explanations took place afterwards, they are clearly incompetent to vary one tittle what the parties have expressed in writing.

3. If not relied on to enlarge or construe the articles of co-partnership, but as independent undertakings on the part of Duke, there is no evidence of any consideration to sustain them.

4. They are, however, not even relied on by Ira Stanbrough and John R. Holliday themselves, who, in their assignment of the insurance money of the 2d December, 1852, put the claim of Giddings, not on the undertakings of Duke, manifested by his interviews with Holliday, but upon their "belief that the said Giddings is entitled to the

same by reason of the said deed of trust," to wit: the deed of trust of the old firm, of March 31st, 1851.

We are authorized, therefore, to reject the testimony of Holliday, not only on the first three of the above legal propositions, which are too clear to require authority to be cited to support them, but upon the very assignment under which the appellant claims.

This, then, leaves but one question open, which is, the effect of the deed of March 31st, 1852, to Daugherty, upon the policies taken out by the new firm. The deed of trust itself provided for the failure of the old firm to insure without any reference to any insurance to be effected by the new one, which last, unquestionably, was not contemplated when the deed of trust was executed, in March, 1851, the new firm being formed in January, 1852. The deed of trust required the trustee to sell, in the event of a failure to insure, and if the *cestui que trust*, the appellant, allowed the property to remain without insurance after the 13th October, 1852, and he has lost by it, he cannot complain, nor can he claim the benefit of an insurance made by a different firm from that which he trusted—an insurance which was in all probability intended as a means of obtaining credit for carrying on the business of the new firm, and was ultimately used in the payment of its obligations.

But even admitting that the deed of the 31st of March gave to the appellant certain equitable claims, which justified what has been done to put the trustee into the legal possession of them—in other words, that they did not pass by the deed of March 31st, 1852, but required for their transfer some more authentic act; we contend that the attempt which was made on the 2d December, 1852, by Ira Stanbrough and John R. Holliday, as "acting partners" of the firm of Stanbrough, Holliday & Co., was totally ineffectual to pass any title to the trustee which he could transfer to the appellant.

24     v. 24.

1. In the first place, there is no evidence that the new partnership was dissolved before it expired by limitation in 1853. On the contrary, Mark A. Duke was an acting partner when he gave the original order to the appellees on the 20th November, 1852, prior to the date of the deed of the so-called "acting partners;" and again, on the 10th of December, when he gave the duplicate order, after the deed aforesaid.

2. In the next place, it is well settled law, now-a-days, that while there are circumstances under which one partner may bind another by deed, yet he can never do so without his consent or against his will; there must, in all such cases, be a previous consent or a subsequent ratification. 1 *Hall Sup. Court, City of New York*, 270. *Collyer on Partnership*, 394. And here the acts of Duke, the partner sought to be bound by his co-partners, in assigning the policy in question to the appellees, both before and after the deed under seal of Stanbrough & Holliday, shew conclusively that there was neither previous consent nor subsequent ratification, nor is there any evidence to show that any custom existed in this particular firm, which justified the attempt to convey, by deed, to which we refer.

The attempt, therefore, was a nullity, and no title passed to the trustee on the 2d December, 1852. The deed was not necessary to pass the "insurance money," though it may have been thought to be necessary to pass the policy, on account of the latter being an instrument under seal. But the policy was burnt. The claim was for a sum of money for which *assumpsit* could have been brought. It required no deed to pass it, and the use of a deed has only served to demonstrate what the simple use of the partnership name would have rendered difficult. Thus the act was done, not by the firm with the implied assent of all the members, but by two of the partners in opposition to the other.

Besides, even in those cases where a partner may bind

his co-partners by a sealed instrument, it is the seal of the firm that must be used, not, as here, the seals of the individuals. *Collyer on Partnership*, and cases referred to. *Story on Partnership*.

But, while we have argued the case in view of the points raised in the Court below, and now apparent on the record, we still insist that the assignment to the appellees, in the course of business and for a valuable consideration, and without notice of any outstanding equities as between the partners or others, if any such existed, was valid and should be sustained.

In the Court below much reliance was placed on the case of *Thomas' Admrs. vs. Von Kapff's Admr.*, 6 *G. & J.*, 372. We regard this case as conclusive against the appellant. There, was a covenant to keep mortgaged property insured for the benefit of the mortgagee; the premises were burnt; the administrators of the mortgagor received the insurance money; the mortgagees' executors claimed it from them; the sale of the burnt property not producing enough to pay the debt, the question was one between the parties themselves. Strangers had nothing to do with it, and the Court gave the insurance money to the mortgagee. Certainly it could not have done otherwise. But here the question is not between the parties cognizant of all the facts and bound by all the obligations of the instrument; here the contest is between the mortgagee and a third party—a stranger—a purchaser for a valuable consideration without notice.

Assuming the theory of the appellant even, that the deed of March 31st, 1852, covered the insurance by the new firm, Duke, who made the assignment to the appellees in the firm's name, as he had a right to do, so far as to give title to parties who had no notice of what might have restrained him, and who gave value for what they received, passed a

title to the assignees which we respectfully insist should be sustained.

GOLDSBOROUGH, J., delivered the opinion of this Court.

The appellant was the owner of certain cotton machinery in the Valley Factory, at Harper's Ferry, in Virginia. This machinery he sold to the firm of Stanbrough & Holliday, on a credit, and took their notes for the purchase money, to secure the payment of which they executed a deed of trust on the 31st day of March, 1851, to William T. Daugherty, in which they agreed to insure the said property to the amount of the debts secured by the deed, in some responsible office. All of the debts thus secured were paid except two notes to the appellant, one for $2,000, and the other for $1,124.

In pursuance of the agreement to insure, Stanbrough & Holliday effected an insurance in the Etna Insurance Company for $5,000 ; $1,500 on fixed machinery, and $3,500 on movable machinery, loss payable to James Giddings. This insurance was for one year, from the 12th day of October, 1850, to the 12th day of October, 1851, and renewed to 12th October, 1852, when it expired.

The firm of Stanbrough & Holliday continued until the 15th day of January, 1852, when Mark A. Duke became a member thereof, under the name of Stanbrough, Holliday & Co., and the firm thus constituted effected two policies of insurance, for $1,000 each ; one in the Etna Insurance Company, and the other in the Protection Insurance Company, both policies embracing the movable machinery in the Valley Factory, and admitted to be the same machinery covered by the first policy, in which it was provided that in the event of loss, the loss was to be payable to the appellant. The two policies, for $1,000 each, were taken out on the 20th of January, 1852, for one year, to the 20th of January, 1853.

Giddings *vs.* Seevers.

On the 3d of August, 1852, Mark A. Duke, one of the new firm, made a purchase of cotton, for the use of the factory, from the appellees, and gave to them a note for $282.47, signed in the name of the firm, and on the 1st of November, 1852, executed another note, payable to the appellees, for $1,253.94. This last note being "a note on which the plaintiffs put their names for a commission paid to them by Stanbrough, Holliday & Co., which last note was paid at maturity by the plaintiffs."

The policy for $5,000 in the name of Stanbrough & Holliday, was transferred on the 24th of January, 1852, to the name of Stanbrough, Holliday & Co. The property was destroyed by fire on the 19th of November, 1852, after the expiration of the policy of $5,000 to Stanbrough & Holliday.

On the 20th of November, 1852, Duke, signing the name of the new firm, gave to the appellees an assignment of each of the $1,000 policies, and afterwards, on the 10th of December, 1852, from some apparent apprehension that the first assignments were not in proper form, he gave them a new assignment of the policies, of which assignments the assignees gave notice to the insurance companies.

On the 2d of December, 1852, Ira Stanbrough and John R. Holliday, describing themselves as the acting partners of the firm, assigned the money due on the $1,000 policies to William T. Daugherty, trustee in the deed of trust, for the benefit of the appellant; and on the 18th of January, 1853, Daugherty assigned the said money to the appellant.

The $2,000 was subsequently paid by the insurance companies to Messrs. Dobbin and Snyder, the counsel of the appellant and appellees, and by them invested for the benefit of the party who might be entitled to it. That the legal right to this fund might be judicially determined, it

"was agreed that a case should be docketed in the Superior Court of Baltimore City to September Term, 1854, and a nar with the common Courts in *assumpsit* be filed with a plea of *non-assumpsit*, and all errors in pleading waived, and that the plaintiffs and defendant may give in evidence the assignments executed to them, respectively, by Stanbrough, Holliday & Co., and that this case shall determine which is entitled to the fund in the hands of the counsel. If it be determined for the plaintiffs, to the extent of the judgment if the fund be sufficient, said fund shall be paid to the plaintiffs, and if for the defendant, in like manner to the defendant."

At the trial of the cause, after the deed of trust, the policies of insurance, assignments, and other instruments of writing, which it was agreed should be admitted in evidence, were submitted to the jury.

John R. Holliday, one of the firm, was produced as a witness for the defendant, and testified that it was understood and agreed between all the members of the new firm, before, at, and after the formation of the co-partnership, that the new firm was to come under all the liabilities of the old firm to James Giddings, in relation to the mortgaged machinery, as the same were embodied in the deed of trust to Mr. Giddings, and that the covenant for insurance was expressly recognized as being among said liabilities, and that the new firm did afterwards pay a part of the debt to Giddings, the said Stanbrough, Holliday and Duke uniting in the signature of their separate names for the balance of the note then settled. The witness further testified that he saw Duke several times at Harper's Ferry, and fully explained to him the liabilities in regard to the insurance, as well for the benefit of Mr. Giddings, as also other insurance for the benefit of the landlord or owner of the mill.

After all the evidence had been submitted to the jury, and before they retired, the plaintiffs offered three prayers and the defendant two prayers. Those of the plaintiffs were granted by the Court, and the defendant's rejected.

The jury, under the instructions of the Court, found a verdict for the plaintiffs for $2,132,81, upon which judgment was entered, with interest from the 3d day of August, 1859. The defendant excepted to the ruling of the Court, and appealed. After the transmission of the record in this case, the following agreement was filed in this Court on the 20th of October, 1865:

"This suit having been originally instituted to try the respective rights of James Giddings, on the one hand, and A. F. and W. R. Seevers, on the other, to a fund in the hands of George W. Dobbin and J. T. Snyder, (and invested by them in City of Baltimore 6 per cent. stock,) it is agreed that if the Court of Appeals shall affirm the judgment of the Superior Court on this appeal, such judgment shall affect only said fund, except as to costs of suit; and if the said Court of Appeals shall reverse said judgment of the Superior Court, then they shall enter judgment for the said James Giddings for the amount of his debt and interest, as shown by the record; said judgment to affect only the said funds in hand, as above mentioned, except as to costs, for which, in any event, the losing party is to be personally liable."

In view of the above agreement, we have carefully considered this case, and are of opinion that the ruling of the Superior Court in granting the plaintiffs' prayers, and rejecting those of the defendant, was erroneous, and the judgment must be reversed. The agreement contained in the deed of trust to insure for the benefit of the appellant, secured to him the proceeds of any insurance when effected; and when Duke became a member of the firm, with full knowledge of the agreement and obligation to insure for

the appellant's benefit, any insurance effected by the new firm was equally affected by the appellant's lien, and Duke could not divert it from this purpose. The appellees must be regarded as general creditors, and not as purchasers of the two policies for a valuable consideration.

The appellant did not trust to the personal credit of the firm alone, but relied also on the insurance for the satisfaction of his claim. The agreement to insure was expressly for his benefit, and not for the benefit of general creditors. The appellees, as general creditors, trusted to the personal credit of the firm alone, and if the assignment of the insurance to the appellees be sanctioned, they derive advantage from a fund which they did not look to, and to that extent take from the appellant that on which he specially relied. See *Thomas' Admr. vs. Von Kapff's Excrs.*, 10 *G. & J.*, 372.

In the case of *Jones vs. Hardesty and others*, 6 *G. & J.*, 420, this Court said : " He who takes an assignment of a *chose in action*, not negotiable, takes it subject to all the legal and equitable defences of the obligor or debtor, to which it was subject in the hands of the assignor. If he accepts the assignment in ignorance of their existence, without using the appropriate means of acquiring a knowledge of them, the consequences are the merited result of his negligence.'' In this case, the deed of trust containing the agreement to insure, was on record and open to public inspection.

The judgment of the Superior Court is reversed, with costs, and judgment rendered for the appellant for $3,124, with interest from the 3d day of May, 1850. This judgment to affect only the fund in the hands of George W. Dobbin and J. T. Snyder, according to the last agreement filed in this cause.

*Judgment reversed with costs.*