*Celink v. The Estate of William R. Pyle*
No. 0940, September Term 2022
Opinion by Kehoe, J.

**Mortgages and Deeds of Trust — Destruction of Premises by Fire**

When the improvements on a secured property are destroyed by fire and the loan is due and payable, Maryland applies the "loss before foreclosure rule."

The rule provides:

> Where a mortgagee has a right to foreclose a mortgage because the mortgage obligation is fully due and payable and the mortgagee has a right to casualty insurance . . . the mortgagee may either:
>
> (1) recover from the insurance proceeds . . .; or
>
> (2) foreclose on the mortgaged real estate and, to the extent that doing so does not satisfy the mortgage obligation, recover the balance from the insurance proceeds[.]

RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) (2007) § 4.8.

Circuit Court for Cecil County
Case No. C-07-CV-19-000482

REPORTED

IN THE APPELLATE COURT OF

OF MARYLAND*

No. 940

September Term, 2022

_____

CELINK

v.

ESTATE OF WILLIAM R. PYLE

_____

Wells, C. J.,
Kehoe,
Zarnoch, Robert A.
    (Senior Judge, Specially Assigned),
                                    JJ.

_____

Opinion by Kehoe, J.

_____

Filed: July 27, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

* At the November 8, 2022 general election, the voters of Maryland ratified a
constitutional amendment changing the name of the Court of Special Appeals of
Maryland to the Appellate Court of Maryland. The name change took effect on December
14, 2022.

In 2016, a fire destroyed the Elkton, Maryland residence of William R. Pyle. The conflagration claimed his life, as well as the life of one of his adult children. Mr. Pyle's residence was subject to a deed of trust which became due upon his demise. The secured party, acting through Compu-Link Corporation d/b/a Celink ("Celink"), its mortgage loan servicer, foreclosed. Celink purchased the property at the foreclosure auction for substantially less than the balance due on the loan. Mr. Pyle maintained a fire insurance policy on the property. This appeal arises out of a dispute between Celink and Mr. Pyle's estate (the "Estate") as to how the proceeds of the policy should be allocated between them. Celink asserts that it is entitled to the difference between what it paid at auction and the total amount due on the loan. Celink concedes that the Estate is entitled to the balance of the policy proceeds. The Estate contends that all of the proceeds are payable to it.

The Circuit Court for Cecil County concluded that the proceeds of the policy were the property of the Estate and issued a declaratory judgment to that effect. Celink has appealed and presents two issues:

> 1. Did the circuit court err in holding that the foreclosure sale extinguished the entire debt, including the deficiency, thereby extinguishing the lender's right to insurance proceeds up to the amount of the deficiency?

> 2. Did the circuit court err in disregarding the contractual assignment of insurance proceeds to Celink?

We sympathize with Mr. Pyle's survivors. However, as we will explain, the circuit court erred when it concluded that Celink's claim to a portion of the insurance proceeds were extinguished by the foreclosure sale. We will reverse the judgment of the circuit

court and remand this case for entry of a judgment consistent with this opinion. There is no reason for us to address Celink's second contention.

BACKGROUND

On February 22, 2013, Mr. Pyle entered into a reverse mortgage loan agreement[1] with Urban Financial Group, Inc. Repayment of the loan was secured by a deed of trust encumbering his residence. Urban Financial's successor-in-interest, Finance of America Reverse LLC, retained Celink to act as sub-servicer of the loan. Celink's responsibilities included foreclosing on the mortgage loan in the event of default.

---

[1] Md. Code, Com. Law § 12–1201(h) defines a "reverse mortgage loan" as:
> [A] nonrecourse loan that:
> (1) Is secured by the borrower's principal dwelling;
> (2) Provides the borrower with purchase money proceeds, a lump sum payment, periodic cash advances, a line of credit, or any combination of those payment plans based on the equity in or value of the borrower's principal dwelling; and
> (3) Requires no payment of principal or interest until the full loan becomes due and payable.

In *Bennett v. Donovan*, 703 F.3d 582, 584–85 (D.C. Cir. 2013), the Court explained:
> A "reverse mortgage" is a form of equity release in which a mortgage lender (typically, a bank) makes payments to a borrower based on the borrower's accumulated equity in his or her home. Unlike a traditional mortgage, in which the borrower receives a lump sum and steadily repays the balance over time, the borrower in a reverse mortgage receives periodic payments (or a lump sum) and need not repay the outstanding loan balance until certain triggering events occur (like the death of the borrower or the sale of the home). Because repayment can usually be deferred until death, reverse mortgages function as a means for elderly homeowners to receive funds based on their home equity.

- 2 -

There are two provisions of the deed of trust that are particularly relevant to the issues raised in this appeal. The first is section 3, which requires the borrower to maintain fire insurance on any improvement located on the property. Section 3 also provides that if there is a loss, and restoration or repair of the property is not "economically feasible," the policy proceeds are to be applied to the balance due on the note, with any excess to be paid "to the entity legally entitled thereto."[2]

The second provision is section 10, which provides that the debt can only be enforced through the sale of the property subject to the deed of trust. Section 10 explicitly prohibits the secured party from obtaining a deficiency judgment in the event of a foreclosure.

The loan became due upon Mr. Pyle's death. Celink appointed substitute trustees who filed a foreclosure action. At the foreclosure auction, the substitute trustees purchased the property for $175,000, which was $208,108.25 less than the balance due on the loan and

---

[2] Section 3 of the deed of trust also states:

> In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

Before the circuit court, and relying on this language, Celink argued that it was entitled to all of the policy proceeds because it purchased secured property at the foreclosure sale. Celink does not make the same contention to us. In its brief it states that it "only seeks a right to collect the proceeds up to the amount of its deficiency[.]"

It is not necessary for us to address the merits of Celink's alternative argument, and we decline to do so. *See Garner v. Archers Glen Partners*, 405 Md. 43, 46 (2008) ("[A]n appellate court should use great caution in exercising its discretion to comment gratuitously on issues beyond those necessary to be decided.")

the costs of sale. Consistent with the prohibition contained in section 10 of the deed of trust, the substitute trustees did not file an action to obtain a deficiency judgment.

Subsequent to the foreclosure sale, the insurer of the property issued a check for the proceeds of the insurance policy in the amount of $287,531.47. The check was payable jointly to the Estate and Celink. The actual check was mailed to the personal representative of the Estate.

Following some initial legal skirmishing, the Estate filed a civil action seeking a declaration that the insurance proceeds were payable to it. The Estate asserted that it had the right to all of the policy proceeds because Celink failed to obtain a deficiency judgment in the foreclosure proceeding. It was Celink's position that, under Maryland law, it had a right to the policy proceeds up to the amount of its deficiency, which was $208,108.25.

After a hearing, the circuit court entered a declaratory judgment that stated in pertinent part that "by foreclosing the Property, [Celink] eliminated the indebtedness secured by the Deed of Trust, thereby eliminating any right or claim to the insurance proceeds[.]" As ancillary relief, the court directed Celink to endorse the check issued by the insurer so that the proceeds could be paid to the Estate.

THE STANDARD OF REVIEW

Because the issues raised in this appeal are questions of law, we exercise *de novo* review over the judgment of the circuit court. *See, e.g.*, *Buarque de Macedo v. Auto. Ins. Co. of Hartford*, 480 Md. 200, 208 (2022).

ANALYSIS

As we have related, the circuit court concluded that Celink's foreclosure of the property eliminated any indebtedness and therefore any claim to the insurance proceeds. The court was incorrect. Maryland law is clear that, as a general rule, if the proceeds of a foreclosure sale are not adequate to discharge the debt, the lender may attempt to recover the balance due from the borrower.[3] In cases in which the foreclosed property is an owner-occupied residential property, the lender's exclusive remedy is to seek a deficiency judgment within the foreclosure action.[4]

In its brief, the Estate acknowledges that the underlying debt was not extinguished by the sale of the property. However, it argues that Celink:

> reserved the right to seek a deficiency judgment in the amount of the balance that was due. However, [Celink] never met the statutory

---

[3] *See, e.g.*, *Daughtry v. Nadel*, 248 Md. App. 594, 617 (2020) (explaining that, at common law, a secured party "had the right to seek recovery of a deficiency that remained after a foreclosure" by "seek[ing] a deficiency judgment within a foreclosure action, or by filing an "action at law to enforce either the Note or the Deed of Trust or a mortgage, as contracts, and to obtain a remedy at law—monetary damages.") (cleaned up) (citing Md. Rule 14-208(b) and *Wellington Co., Inc. Profit Sharing Plan & Tr. v. Shakiba*, 180 Md. App. 576, 591 (2008)).

[4] *See Daughtry*, 248 Md. App. at 615 (explaining that in 2014, the General Assembly enacted chapter 592 of the 2014 Laws of Maryland which added § 7-105.13 to the Real Property Article). Section 7-105.13 provided that "a motion for a deficiency judgment shall constitute the sole post-ratification remedy available to a secured party or party in interest for breach of a covenant contained in a deed of trust, mortgage, or promissory note that secures or is secured by owner-occupied residential property." In 2019, Real Prop. § 7-105.13 was recodified as Real Prop. § 7-105.17. *See* Chapter 93, Laws of Maryland 2019.

requirements under Md. Rule 14-216(b)[5] to preserve that right of collection.

There are two difficulties with this contention. The first is that Celink did not reserve the right to seek a deficiency judgment—it expressly waived its right to do so in the deed of trust. The second problem is that this action is not one in which Celink is seeking a deficiency judgment. Instead, the parties are seeking a declaration of their respective rights to the proceeds of the insurance policy. Rule 14-216(b) does not apply to this case.

This brings us to the dispositive issue in this appeal, namely, the proper interpretation of section 3 of the deed of trust, which provides that, if there is an insurable loss and if restoration of the property is not economically feasible, "the insurance proceeds shall be applied . . . to the reduction" of the secured indebtedness. Our first step is one of terminology.

In the factual context presented by this appeal, disputes between lenders and borrowers over the proceeds of fire insurance policies tend to fall into two categories. The first consists of cases in which the insurable loss occurs prior to the foreclosure sale. These are termed "loss before foreclosure" cases. As we will explain, the secured party has a claim to the policy proceeds up to the difference between the amount realized at the

---

[5] Md. Rule 14-216 states in pertinent part:

> (b) Deficiency Judgment. At any time within three years after the final ratification of the auditor's report, a secured party or any appropriate party in interest may file a motion for a deficiency judgment if the proceeds of the sale, after deducting all costs and expenses allowed by the court, are insufficient to satisfy the debt and accrued interest. . . .

sale and the balance due on the secured indebtedness. The borrower is entitled to the remainder. We will refer to this principle as the "loss before foreclosure rule."[6]

The *fons et origo* of the loss before foreclosure rule in Maryland is *Thomas' Adm'rs v. Vonkapff's Ex'rs*, 6 G. & J. 372, 1834 WL 2000 (1834). The mortgage at issue in that case stated that the borrower would maintain fire insurance on all of the improvements on the secured property and that, in the event of a loss, policy proceeds

> shall be immediately applied to the rebuilding . . . so that the [lender] . . . shall in case of loss by fire, be benefitted by such insurance, or participate in the benefit thereof, to the extent of his aforesaid lien.

*Id.* at 378.[7]

The principal building on the property was destroyed by fire and the insurer paid $10,000 to the borrower, who deposited the sum in a bank pending a decision whether to rebuild the structure or to pay the sum to the lender in partial satisfaction of the mortgage debt. 6 G. & J. at 374. Both the borrower and the lender died before the former made a decision. *Id.* at 374–75. The lender's administrators thereupon foreclosed but the

---

[6] The other scenario is when the loss occurs after the foreclosure sale. The general rule is: "If a casualty loss occurs after the mortgagee has purchased at the sale the mortgagee is entitled to the full amount of the loss, up to the amount of the policy limits." Baxter Dunaway *et al*. 1 THE LAW OF DISTRESSED REAL ESTATE § 11:105 (2023) (citing, among other authorities, *Nationwide Mut. Fire Ins. Co. v. Wilborn*, 291 Ala. 193, 196–97 (1973) (footnote omitted)). In *Rollins v. Bravos*, 80 Md. App. 617, 628–29 (1989), we implied that this approach would apply in Maryland.

[7] We have gleaned the facts from the reporter's notes, 6 G. & J at 373–75, and the Court's opinion, *id.* at 378–79.

proceeds of the sale were significantly less than the balance due on the mortgage. *Id.*at 374. The borrower's successors-in-interest then asserted that, because the property had been sold, it was impossible for the policy proceeds to be used to rebuild the improvements as the mortgage required. Accordingly, they argued, the proceeds were an asset of the borrower's estate, free and clear of any claim that could be asserted by the lender. 6 G. & J. at 378–79.

Not so, concluded the Supreme Court of Maryland.[8] The Court recognized that, under the literal terms of the mortgage, the insurance proceeds were to be used to repair or rebuild the damaged improvements. Therefore, the lender had no enforceable legal right to the proceeds. However, the Court concluded that (1) a covenant in a mortgage requiring the borrower to provide fire insurance for the secured property was for the benefit of the lender and its assignees, (2) any claim by the borrower or his successors-in-interest to the policy proceeds was "subject to the [lender's] equity," (3) the lender had the right to enforce its interest, and (4) the lender's right to do so stemmed from fundamental principles of equity and fairness. 6 G. & J. at 380–81. The court explained:

> We have said that although a lien existed, it gave [the lender] no right to the possession of the fund . . .; the design being to apply it for the purpose of reinstating the premises. But the facts show that the lien cannot in the terms of the contract be specifically enforced, owing to the sale of the mortgaged premises. A court of equity, however, is not on this account powerless. It must administer relief, in the only manner in which it can now be done. As

---

[8] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

- 8 -

the leading object in effecting the insurance, was exclusively a beneficial
one to the [the lender], its great spirit and object will be effectuated by
decr[e]eing him the fund. The mode only, of giving relief, will be changed.

*Id.* at 382.

Maryland's appellate courts have cited one or more of *Thomas'* holdings in

*Mercantile-Safe Deposit & Tr. Co. v. Mayor & City Council of Baltimore*, 308 Md. 627,

632–33 (1987); *Com. Bldg. & Loan Ass'n v. Robinson*, 90 Md. 615, 620 (1900); *Carson*

*v. Phelps*, 40 Md. 73, 89 (1874); *Giddings v. Seevers*, 24 Md. 363, 375–76 (1865);

*Alexander v. Ghiselin*, 5 Gill 138, 174 (1847); and *Gallagher v. Bell*, 69 Md. App. 199,

209 n.5 (1986). Additionally, but without specifically citing to *Thomas*, our Supreme

Court applied one or more of its holdings in *Seidewitz v. Sun Life Insurance Company of*

*America*, 144 Md. 508, 514–515 (1924); *Heinz v. German Building Association,* 95 Md.

160, 169 (1902); and *Callahan v. Linthicum*, 43 Md. 97, 101, 103–04 (1875).[9]

Our survey of the Maryland cases concludes with *Rollins v. Bravos*, 80 Md. App. 617

(1989). In it, we observed that in Maryland, "where a mortgage requires the mortgagor to

insure the property against loss and the property is so insured when a loss occurs as to

which the insurance applies, the proceeds of the policy of insurance must be applied to

---

[9] Additionally, *Thomas* was cited by a number of courts in other jurisdictions as
supporting the principle that a lender has an equitable claim to the proceeds of a fire
insurance policy if the loss occurred prior to foreclosure. *See, e.g.*, *Burton v. Chesapeake
Box & Lumber Corp.*, 190 Va. 755, 765–66 (1950); *Hyde v. Hartford Fire Ins. Co.*, 70
Neb. 503, 97 N.W. 629, 630 (1903); *Nordyke & Marmon Co. v. Gery*, 112 Ind. 535, 13
N.E. 683, 684–85 (1887); *Ames v. W. Mfrs. Mut. Ins. Co.*, 29 Minn. 330, 333, 13 N.W.
137, 138–39 (1882); and *Nichols v. Baxter*, 5 R.I. 491, 494 (1858).

the extinguishment of the debt." *Id.* at 629 (citing, among other cases, *Seidewitz*, 144 Md. 508 at 514–515, and *Heinz*, 95 Md. at 169). Further, we espoused what we characterized as the "majority view" across jurisdictions regarding the loss before foreclosure rule:

> [W]here the insured premises are damaged before foreclosure proceedings have been instituted or, if after they have been instituted, prior to the sale being held, and the mortgagee purchases the property at the foreclosure sale, the mortgagee is permitted to retain the insurance proceeds pursuant to a mortgage clause requiring insurance, to the extent of any deficiency between the amount brought at foreclosure and the amount of the debt. The remainder of the proceeds is payable to the mortgagor.[10]

*Id.*

Thus, in *Rollins*, we reiterated what the Supreme Court of Maryland had first articulated 155 years earlier in *Thomas.* We are not quite through with *Thomas*, however.

In *Wheeler & Co. v. Factors' & Traders' Ins. Co. of New Orleans*, 101 U.S. 439 (1879), the United States Supreme Court identified *Thomas* as the leading case in this country for the proposition that "if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property [is] destroyed." *Id.* at 442.

---

[10] In *Thomas v. PHH Mortgage Servs*., No. CV RDB-16-3700, 2017 WL 2242671, at *3 (D. Md. 2017), the Court quoted this passage and observed that it was "undisputed" that *Rollins* correctly summarized Maryland law.

The principles enunciated in *Thomas* and *Wheeler* are fully consistent with the leading modern case on this topic, *National Mutual Fire Ins. Co. v. Wilborn*, 291 Ala. 193, 279 So. 2d 460, 463–64 (1973), which stated (emphasis added):

> Where. . . the [property damage] loss precedes the foreclosure, the rule is [that the mortgagee] may satisfy the mortgage indebtedness by two different means. He may look to the insurance company for payment as mortgagee . . . and may recover, up to the limits of the policy, the full amount of the mortgage debt at the time of the loss. In this event he would have no additional recourse against the mortgagor for the reason that his debt has been fully satisfied.

> The second alternative available to the mortgagee is satisfaction of the mortgage debt by foreclosure. *If the mortgagee elects to pursue this latter option, and the foreclosure sale does not bring the full amount of the mortgage debt at the time of the loss, he may recover the balance due under the insurance policy as owner.* If the foreclosure does fully satisfy the mortgage debt, he, of course, has no additional recourse against the insurance company, as his debt has been fully satisfied.[11]

The reasoning of all of these decisions is reflected in the American Law Institute's RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) (2007).

The basic principle is set out in Restatement §§ 4.7–4.8. Section 4.7 states in relevant part (emphasis added):

> Mortgagee's Right to Funds Paid Under Casualty Insurance or Taking in Eminent Domain

> (a) Unless a different disposition is provided in the mortgage, the mortgagee has a right to the following funds paid on account of loss or

---

[11] Other representative recent decisions recognizing and applying the loss before foreclosure rule include: *Lexington Ins. Co. v. 3039B Assocs., Inc.*, 627 Fed. Appx. 108, 111 (3d Cir. 2015); *Allstate Insurance Company v. James*, 779 F.2d 1536 (11th Cir. 1986); *Lenart v. Ocwen Fin. Corp.*, 869 So. 2d 588, 591–92 (Fla. Dist. Ct. App. 2004); and *Rodriguez v. First Union Nat. Bank,* 810 N.E.2d 1282, 1285 (Mass. App. Ct. 2004).

damage to the mortgaged real estate, to the extent that the mortgagee's security has been impaired by the loss or damage. . .:

(1) *the proceeds paid by a casualty insurer due to the occurrence of an insured loss to the real estate, if the mortgagor promised the mortgagee, in the mortgage or otherwise, to purchase the insurance*[.]

Restatement § 4.8 states in relevant part (emphasis added):

Effect of Foreclosure on Mortgagee's Right to Insurance and Eminent Domain Proceeds

(a) Where a mortgagee has a right to foreclose a mortgage because the mortgage obligation is fully due and payable and the mortgagee has a right to casualty insurance or eminent domain proceeds under § 4.7, the mortgagee may either:

(1) recover from the insurance proceeds . . .; or

(2) foreclose on the mortgaged real estate and, to the extent that doing so does not satisfy the mortgage obligation, recover the balance from the insurance proceeds or from the eminent domain award.

Comment a to Restatement § 4.8 is particularly pertinent. It explains (emphasis added):

In the event of an insured casualty loss, the mortgagee may satisfy the mortgage obligation by two different means. It may recover on the insurance policy, up to its limits, the full amount of the mortgage obligation at the time of the loss. . . . *Alternatively, the mortgagee may proceed first to foreclose the mortgage. When this approach is followed, and the*

- 12 -

> *foreclosure sale does not yield the full amount of the mortgage obligation, the balance may be recovered under the insurance policy, up to its limits.*[12]

We note that the parties do not identify, nor have we been able to find, appellate decisions applying the loss before foreclosure rule in cases involving reverse mortgages and deeds of trust. Nonetheless, application of the loss before foreclosure rule makes sense in this case. Mr. Pyle's residence, together with the fire insurance policy that he was required to maintain to protect the lender's interests, was the security for the repayment of the loan. Under the terms of the deed of trust, as well as by Maryland law, Celink was barred from seeking a deficiency judgment. Therefore, we do not agree with the Estate that Celink's failure to obtain a deficiency judgment somehow precluded its ability to share in the proceeds of the fire insurance policy.

In summary, we see no reason why the legal principles that were first articulated by the Supreme Court of Maryland nearly two centuries ago to protect a lender's interests when the collateral is damaged by fire should not apply in this case.[13]

---

[12] The reasoning in the Restatement and the cases discussed in the main text is reflected in the preeminent treatise on insurance law:

> When insured property is damaged prior to foreclosure, a purchasing mortgagee may retain under the mortgage clause those proceeds amounting to any deficiency after foreclosure and the mortgagor recovers the remainder of the proceeds.

Steven Plitt *et al*., 12A COUCH ON INSURANCE § 178:57 (3rd. Ed., 2023 Update) (footnotes omitted).

[13] We do not address whether or how the loss before foreclosure rule might apply in cases involving inequitable or improper conduct by a lender.

CONCLUSION

We reverse the judgment of the circuit court and remand this case to it for it to enter a judgment declaring that Celink is entitled to $208,108.25 of the policy proceeds and that the Estate is entitled to the remaining balance. The circuit court may also grant such further relief as is necessary or proper to effectuate the declaratory judgment. *See* Courts & Jud. Proc. § 3-412; *Falls Road Community Ass'n v. Baltimore County*, 437 Md. 115, 148 (2014).

**THE JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY IS REVERSED AND THIS CASE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY COSTS.**