In re Suzanne MYERS, Debtor.

Suzanne MYERS, Plaintiff,

v.

FEDERAL HOME LOAN MORTGAGE CO., America's Mortgage Servicing, Inc.[1] and Century Mortgage Co., Inc., Defendants.

Bankruptcy No. 92–22754.
Adv. No. 93–1487.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 22, 1994.

14. As noted above, the order in question issued on October 12, 1994.

1. On October 3, 1994, summary judgment was granted in favor of America's Mortgage Servicing, Inc. ("AMSI") It is not further involved in these proceedings.

Gary Klein, Nat. Consumer Law Center, Boston, MA, Bernadette Sullivan, Greater Boston Legal Services, Dorchester, MA, for Suzanne Myers.

Bradley W. Snyder, David Yanofsky, Looney & Grossman, Boston, MA, for Fed. Home Loan Mortg. Co.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

WILLIAM C. HILLMAN, Bankruptcy Judge.

Suzanne Myers ("Myers") filed her original petition in this case under Chapter 7 on December 18, 1992. On April 27, 1993, the case was converted to one under Chapter 13.

In this adversary proceeding, filed June 20, 1993, she seeks relief against the Federal Home Loan Mortgage Co. (commonly, and herein, called "Freddie Mac") and Century Mortgage Co., Inc. ("Century") (collectively the "defendants"). The bases of the claims made are violations of the Consumer Credit Cost Disclosure Act, M.G.L. c. 140D ("CCCDA") and the Consumer Protection Act, M.G.L. c. 93A ("93A"), in connection with a mortgage loan which she obtained from Century.

In particular, she charges:

*Count I:* Failure to provide a disclosure statement in conformity to CCCDA, giving rise to a right to rescind, $2,000 in damages plus attorneys' fees and costs.

*Count II:* Violation of 93A arising from the same facts as Count I.

*Count III:* The filed proof of claim is excessive.[2]

Freddie Mac has moved for summary judgment alleging that:

1. This action is barred by the three year statute of limitations of the Federal Consumer Cost Disclosure Act, commonly called the Truth in Lending Act ("TILA").
2. If CCCDA does apply, Freddie Mac is an "assignee," not a "creditor" within the meaning of CCCDA.
3. As an assignee, Freddie Mac's liability is limited to cases involving facially defective disclosure statements.
4. Myers cannot demonstrate a facially apparent defect in the disclosure statement.

### Summary Judgment Motions

Fed.R.Civ.P. 56, made applicable to adversary proceedings by Fed.R.Bankr.P. 7056, governs motions for summary judgment. It provides that

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The present motion is more akin to a motion to dismiss under F.R.Civ.P. 12(b)(6), as it attacks the legal sufficiency of the claim made and no factual assertions are involved. Such a motion should not be granted unless "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Garita Hotel Limited Partnership v. Ponce Federal Bank,* 958 F.2d 15, 17 (1st Cir.1992).

### The applicable statute of limitations

Freddie Mac's first argument is that demand in this case was not made until December 18, 1992, more than three years after the loan closing at which the alleged

---

2. The claim was filed by AMSI but, by an agreed order of October 3, 1994, it was amended to substitute Freddie Mac as the claimant.

violations occurred. As a result, it says, the claim is outside of the three year limitation period of TILA.[3] Plaintiff agrees as to the operative date but counters by urging that the applicable law is the Massachusetts CCCDA's four year period. M.G.L. c. 140D, § 10(f).

TILA is a comprehensive statute designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and void the uniformed use of credit ..."

15 U.S.C. § 1601(a).

It provides two types of remedies for violation of its provisions. A right of rescission is created by 15 U.S.C. § 1635. That right, as relevant here, "shall expire three years after the date of consummation of the transaction...." 15 U.S.C. § 1635(f).

The same section provides that

"In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind."

15 U.S.C. § 1635(g).

Thus, if a § 1635 right of rescission is found to exist, it is possible to look beyond that conclusion for violations condemned by § 1640. As relevant here, the last cited section provides that

"any creditor who fails to comply with any requirement imposed under this part,[4] including any requirement under section 1635 ... with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction ..., except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

(B) ...; and

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court."

15 U.S.C. § 1640(a) (footnote added).

This section has its own statute of limitations. The action must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

Since it has been agreed that the operative date for Myers' action was more than three years from the date of the violation, both portions of the claim for relief, rescission and damages, would be barred if the Federal statute is applicable.

However, Congress left the door open for states to create their own truth-in-lending acts, so long as the disclosures required were substantially the same as those of TILA. The Federal Reserve Board (the "Board") is given the option to determine whether a particular state's laws require disclosures "substantially the same in meaning as a disclosure required by this subchapter."[5] 15 U.S.C. § 1610(a)(2). In so doing,

"The Board shall be regulation exempt from the requirements of this part any class of credit transactions within any State if it determines that under the law of that State that class of transactions is subject to requirements substantially similar to those imposed under this part, and that there is adequate provision for enforcement."

15 U.S.C. § 1633.

The Board has ruled that

"Credit transactions subject to the Massachusetts Truth in Lending Act are exempt from chapters 2 and 4 of the Federal act.

---

3. "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first...." 15 U.S.C. § 1635(f). There is no contention that the property has ever been sold.

4. The "part" referred to is Part B—Credit Transactions, which comprises §§ 1631–1646.

5. The "subchapter" is Subchapter I, which includes §§ 1601–1667e.

(The exemption does not apply to transactions in which a federally chartered institution is a creditor.)"

48 Fed.Reg. 14882, 14890 (April 6, 1983).[6]

The defendants urge that Massachusetts law is inapplicable in the present case because Freddie Mac is a federally chartered institution and is a creditor. Resolution of that argument requires answers to two subquestions, to wit:

1. *Is Freddie Mac a federally chartered institution?*

█ The Federal Home Loan Mortgage Corporation was created by Chapter 11A of Title 12 of the United States Code. *See* 12 U.S.C. § 1451(b). It is a federally chartered institution. The cases which Freddie Mac cites, while apposite, are no substitute for the statutory citation which was not provided.

2. *Is Freddie Mac a "creditor" within the meaning of TILA?*

█ As relevant to the facts of this case, a TILA "creditor" must fall within the statutory definition:

"The term 'creditor' refers only to a person who both (1) regularly extends ... consumer credit ... *and* (2) is the person to whom the debt arising from the consumer credit transaction is *initially payable on the face of the evidence of indebtedness....*"

15 U.S.C. § 1602(f) (emphasis added).

It is Century, not Freddie Mac, whose name appears on the face of the note. Freddie Mac is not a "creditor" within the definition. As a result, it is not excepted from the exemption. The Massachusetts four year statute of limitations will control.

█ Freddie Mac contends that "the longer [Massachusetts] limitation period is explicitly preempted by Federal Law" without any citation of authority. I have been unable to determine the basis of that claim, which is contrary to my reading of the statute.

---

**6.** Chapters 2 and 4 are Parts B and D of TILA.

---

*Is Freddie Mac liable under Massachusetts law?*

*Liability as assignee*

█ Assuming that Massachusetts law is applicable, Freddie Mac contends that it is not a "creditor" within the meaning of the CCCDA, but is an "assignee" under that statute. As a result, it argues, it is not liable for a rescission remedy since that relief lies only against a creditor. As noted above, the CCCDA and TILA definitions of "creditor" are the same. Freddie Mac is not a creditor under the former statute, for the reasons stated in the TILA analysis above, but that does not resolve the present issue. Freddie Mac's argument ignores the specific language of CCCDA § 33(c):

"Any consumer who has the right to rescind a transaction under section ten may rescind the transaction as against an assignee of the obligation." [7]

Myers alleges a right to rescind under § 10. Accordingly, Freddie Mac's argument seeking summary judgment as to the claim for rescission because it is not a creditor is not well founded. It is liable as an assignee.

*Liability for monetary damages*

█ Myers has also demanded monetary damages and attorneys' fees.

While the Board has ruled that Massachusetts creditors are exempt from TILA, as quoted above, it has also determined that the exemption does not extend to § 1640 (or § 1641 discussed below). This, it is said,

"assures that consumers retain access to both federal and state courts in seeking damages or civil penalties for violations, while creditors retain the defenses specified in those sections."

48 Fed.Reg. 14882, 14890 (April 6, 1983).

Since the internal statute of limitations of § 1635, quoted above, has expired, no remedies are available to Myers under it. The absence of a rescission remedy eliminates the referral over to § 1635(g). The direct damages claim under § 1640 has a one year

---

**7.** This language is substantively identical to TILA § 1641(c).

limitations period, 15 U.S.C. § 1640(e), which has also expired.

■ If Myers is to have a damages remedy, it must be found in CCCDA.

The Massachusetts statute contains a precise parallel to TILA § 1635(g):

"In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section thirty-two not relating to the right to rescind."

M.G.L. c. 140D § 10(g).

It is in the referenced section that the Federal and Massachusetts statutes have a significant difference.

TILA contains, as noted, a specific one year statute of limitations. 15 U.S.C. § 1640(e). No such provision is contained in CCCDA.

The Supreme Judicial Court had considered the parallel provision of the earlier Massachusetts statute, M.G.L. c. 140C, which was repealed by Mass.St.1981, c. 733, § 1. It held that recoveries under that statute were penalties to which the one year statute of limitations of M.G.L. c. 260 § 5 would apply. *Lynch v. Signal Finance Co.*, 367 Mass. 503, 506, 327 N.E.2d 732 (1975). Within months, the General Court added a new section to the provisions on limitation of actions to provide that actions under CCCDA

"whether for damages, penalties or other relief and brought by any person . . . shall be commenced only within four years next after the cause of action accrues."

M.G.L. c. 260 § 5A.[8]

The damages and fee claims are not barred by the statute of limitations.

*"Facially defective" disclosure statements*

■ Freddie Mac next contends that it, as an assignee, is not liable because of the following language of CCCDA § 33(a):

"Except as otherwise specifically provided in this chapter, or any rule or regulation issued thereunder, any civil action for a

violation of this chapter or any rule or regulation . . . which may be brought against a creditor may be maintained against any assignee of such creditor *only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.*"

(Emphasis by Freddie Mac).

Freddie Mac neglects to emphasize the first words of the sentence: *"Except as otherwise specifically provided in this chapter"*. To find a specific exception it need only look to subsection (c) of the same section, quoted above.

But Freddie Mac argues that since subsection (c) "does not address the requirement of a violation on the face of a disclosure statement" it is not intended to override the "facially defective" provision of subsection (a).

The suggested reading does violence to the statute. If subsection (c) did not exist, the situation would be exactly that proposed by Freddie Mac—there could be no action against an assignee for any violation unless it was facially apparent. We must assume that Congress and the General Court intended to accomplish something when subsection (c) was adopted. It can have only one purpose—to reverse the liability rule of subsection (a) for assignees when the violation is a failure to give disclosures, which is the ground upon which one may seek rescission. *See Hunter v. Richmond Equity*, 1987 WL 10973 (N.D.Ala.1987) (§ 1641(c) provides a right to rescind exercisable against assignee whether or not violation is apparent); S.Rep. 96–368, § 516, U.S.Code Cong. & Admin.News 1980, 236, 268 (Sub-section (c) eliminates ambiguity; consumer's exercise of right effective against assignee because otherwise no effective rescission remedy exists).

Looking at the federal policy and the realities of the secondary market for consumer paper, the distinction makes sense. If assignees could be bound by deficiencies in the instruments purchased what were not apparent on the face of the documents, the flow of those documents in commerce would be im-

---

**8.** The statute originally referred to C. 140C. The reference was changed when C. 140D was adopted. Mass.St.1982, c. 332., § 11.

**128**

peded. However, when the TILA/CCCDA violation is a failure to give disclosures, an assignee is on instant notice when it does not receive a copy of the appropriate disclosures with the loan documents. It can protect itself easily and without undue delay.

I hold that the facial violation requirement does not affect an action against an assignee by one who has the right to rescind a transaction under CCCDA § 10.

### Is tender necessary for rescission?

■ Myers alleges the giving of a timely notice of rescission under CCCDA § 10(a). Giving of the notice triggers two events, both specified in CCCDA § 10(b):

■ "Within twenty days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."

■ "If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor...."

Freddie Mac contends that Myers, as a Chapter 7 debtor, cannot tender return of the sums advanced as required by law and hence cannot fulfill a condition precedent to recovery. In so doing, it ignores the final sentence of § 10(b):

"The procedures prescribed by this subsection shall apply except when otherwise ordered by a court."

The power of a court under the last quoted provision has been subject to varying judicial interpretations. I will limit my discussion to cases where the person seeking rescission has claimed the protection of the Bankruptcy Code.

In what appears to be the only reported decision in this Circuit, the obligor seeking rescission had filed his petition under Chap-

ter 7. Judge Carter held that the power to "otherwise order" permitted him to change the order of the steps set out in TILA § 1635(b), or its identical counterpart in the Maine statute. He conditioned rescission of the loan upon repayment of the loan proceeds to the lender, dismissing the cases permitting rescission without repayment as unpersuasive. *New Maine National Bank v. Gendron,* 780 F.Supp. 52, 57 (D.Me.1991).

I respectfully disagree with that conclusion. I find the opposite view more compelling.[9]

As Judge Hutton stated in *Celona v. Equitable National Bank:*

"Judicial preconditioning of cancellation of the creditor's lien on the customer's tender is inappropriate in bankruptcy cases."

98 B.R. 705, 707 (E.D.Pa.1989).

He found that the bankruptcy court had been correct when it ordered the voiding of the creditor's security interest without tender of repayment, with the amount due being treated as an unsecured debt.

The difference between cases where the obligor is the subject of bankruptcy proceedings and otherwise is well stated by Judge Deitz:

"In a non-bankruptcy setting, the rights and duties of the parties upon TIL rescission are clear and absolute. Each party must make the other as whole as he would have been had the contract never been entered into. In the absence of bankruptcy, there is no legal impediment to either party doing what is required to restore the status quo ante. Consequently, the creditor's statutory duty to perform first merely establishes the order of performance; it does not alter the ultimate effect on the remedy.

"Bankruptcy, however, relieves the debtor from his obligation to pay the creditor upon rescission. Conditioning rescission upon the debtor's payment therefore imposes an obligation from which the debtor has been legally freed. Unlike the situa-

---

9. I have also considered and disagreed with other decisions, such as *In re Foster,* 105 B.R. 67

(Bankr.N.D.Okla.1989).

tion absent bankruptcy, there is a legitimate, legal impediment to the debtor's reciprocal performance. It would be palpably unfair to deny the relief to which a consumer is entitled under TIL because that consumer has also availed himself of bankruptcy relief. To do so would require that the consumer choose between bankruptcy and TIL, something neither form of statutory relief contemplates.

"The equities ... lie in the debtor's favor. Upholding the creditor's plea ... would allow the creditor to escape the consequences of a serious TIL violation, while at the same time negating the fresh start given the debtors upon their discharge."

*In re Piercy,* 18 B.R. 1004, 1007–08 (Bankr. W.D.Ky.1982). *See also In re Chancy,* 33 B.R. 355, 356–57 (Bankr.N.D.Okla.1983).

I hold that rescission by an obligor is not conditioned by tender or payment in the context of a bankruptcy case.

### The 93A claims

A violation of CCCDA is a violation of Ch. 93A. CCCDA § 34. Having held that, as a legal matter, Myers has alleged a valid claim under CCCDA she has also alleged a claim under Ch. 93A.

Freddie Mac's assertions with regard to the Ch. 93A claims not previously discussed need little attention. If notice was required under the circumstances of this case, the allegations of the complaint, if established, would demonstrate that notice was adequately given.

### Conclusion

In the context of the legal principles enunciated above, and my conclusions as to the applicable law, I find that Freddie Mac has not satisfied its burden of proof, either as a motion for summary judgment or as a motion to dismiss.

The motion is denied. A separate order will enter. A pre-trial conference will be scheduled in ordinary course.