## Arnold R. Duclersaint vs. Federal National Mortgage Association.

Middlesex. April 6, 1998. - July 15, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Real Property,* Mortgage. *Mortgage,* Foreclosure. *Contract,* Mistake. *Consumer Protection Act,* Mortgage of real estate, Unfair or deceptive act.

A mortgagee who sold and then purchased property at a foreclosure sale was required, pursuant to G. L. c. 183, § 27, to give the mortgagor any surplus recovered at the sale above the amount owed to the mortgagee, including fees and costs, and the appropriate remedy for an alleged "mistake" of the mortgagee in bidding more than it was owed is to seek, in equity, a new sale. [811-814]

In a claim brought by a mortgagor under G. L. c. 93A, alleging that a mortgagee refused to provide an accounting or to pay over a surplus recovered at a foreclosure sale, the record did not establish that the mortgagee acted wilfully in violation of G. L. c. 183, § 27, or employed an unfair or deceptive business practice. [814-815]

Civil action commenced in the Superior Court Department on September 25, 1995.

The case was heard by *Herman J. Smith, Jr.,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Leon M. Fox* for the plaintiff.

*Michael H. Arwe* for the defendant.

*Thomas M. Looney & Richard E. Gentilli* for Massachusetts Conveyancers Association & another, amici curiae, submitted a brief.

Ireland, J. The plaintiff, Arnold R. Duclersaint, appeals from the award of summary judgment in favor of the defendant, Federal National Mortgage Association, on his complaint in which he sought a judgment against the defendant under the provisions of G. L. c. 183, § 27, for failure to pay the surplus generated from a foreclosure sale, and damages for alleged

violations of G. L. c. 93A. The defendant, who purchased the property at the foreclosure sale, claimed there was no surplus because it made a mistake when it bid more for the property than it was owed, and that its purchase of the property was a "paper transaction" only, i.e., "[n]o real funds were ever realized by [the defendant]." On cross motions for summary judgment, the judge ruled in favor of the defendant, concluding that the plaintiff would recover an "undeserved windfall" not equitably owed to him if he were to receive the surplus. The plaintiff appealed, and we transferred the appeal here on our own motion.

Summary judgment will be upheld on appeal when, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *McDonough* v. *Marr Scaffolding Co.*, 412 Mass. 636, 638 (1992), quoting *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). Because we conclude that (1) the purchase was not merely a "paper transaction"; (2) the defendant's bid created a surplus to the extent the bid exceeded the amount owed to the defendant; and (3) the defendant's mistake in instructing its agent to bid more for the property than it was owed does not relieve the defendant of its obligation to give the surplus to the plaintiff, the order granting the defendant's motion for summary judgment must be vacated. Furthermore, because the plaintiff has not demonstrated that the defendant's actions were unfair or deceptive, we conclude that his G. L. c. 93A claim is without merit.

The following facts are undisputed. The plaintiff purchased real estate on November 17, 1989, for $185,000. At the time of purchase, he gave a mortgage to the defendant's predecessor in interest for $148,000. Through a subsequent transaction, the defendant acquired this mortgage.

The plaintiff defaulted on the mortgage, and in 1994 the defendant foreclosed by public auction under the power of sale contained in the mortgage agreement. At the time of foreclosure, the plaintiff owed the defendant $159,000 including fees and costs. Prior to the foreclosure sale, the defendant valued the property at $200,000. The defendant instructed its agent to bid $180,000, ninety percent of the value of the property, with further instructions to bid up to $200,000 if there were any third party bidders.

At the foreclosure sale on January 10, 1994, the defendant

bid $180,000, which was the highest bid at the sale.[1] Accordingly, the foreclosure deed, affidavit, and other relevant documents were recorded in the registry of deeds vesting title in the defendant for $180,000. As a result, a surplus of $21,000 was created by the sale of the foreclosed property. The defendant subsequently sold the property to a third party.

In late 1994 or early 1995, the defendant sent the plaintiff Internal Revenue Form 1099-A indicating that the gross mortgage balance had been $144,769[2] and that the gross foreclosure price was $180,000. On July 27, 1995, relying on G. L. c. 183, § 27, the plaintiff made demand on the defendant for an accounting of the mortgage foreclosure sale amount and for the surplus funds, the interest owed from January, 1994, and asserted a claim for damages under G. L. c. 93A. On August 10, 1995, the defendant acknowledged receipt of the letter, by facsimile transmission, and promised a response within ten days. The defendant did not respond as promised, and the plaintiff commenced this action.

Subsequently, the defendant claimed there was no surplus because it made a mistake when it bid more for the property than it was owed, and its purchase of the property at the foreclosure sale was a "paper transaction" only, because no money actually changed hands. Therefore, it claimed that the bid simply wiped out the outstanding debt owed by the plaintiff and allowed it to take legal title to the property.

1. *Disposition of the surplus.* The plaintiff claims that he is entitled to the surplus regardless of whether the defendant made a mistake or whether money actually changed hands, because the defendant's purchase of the property at foreclosure was a valid sale. We agree.

Generally, a mortgagee must give a mortgagor any surplus generated at a foreclosure sale. G. L. c. 183, § 27.[3] The surplus

---

[1] It is unclear whether there were other bidders at the foreclosure sale. This fact could be material, because if there were other qualified bidders at the foreclosure sale who might have bid more than the outstanding debt on the mortgage, but did not because the mortgagee's $180,000 bid precluded a lower bid, the plaintiff would be harmed by reforming the purchase price, because he would not recoup the surplus that would have been generated by a sale to the third party.

[2] After fees and costs were included, the "total debt" owed to the defendant was $159,000.

[3] General Laws c. 183, § 27, states in relevant part:

is any amount recovered at a foreclosure sale above the amount owed to the mortgagee, including fees and costs. In addition, the value of property is set conclusively by the final bid accepted at the foreclosure sale. See *Goldman* v. *Damon*, 272 Mass. 302, 305-306 (1930). Here, the defendant bid $180,000 after making an appraisal of $200,000; completed the foreclosure process by executing and recording the foreclosure deed, affidavit, and other documents for $180,000; and notified the plaintiff that the property had been sold for $180,000. If a third-party purchaser had taken the same steps, there would be no question that the sale and purchase price was valid and that the defendant owed any surplus from this sale to the plaintiff. Our case law is clear that a mortgagee who purchases at foreclosure has no more rights than a third-party purchaser, see, e.g., *id.*, and is "bound to exercise the utmost good faith in making the foreclosure sale." *Crane* v. *White*, 215 Mass. 478, 480 (1913). See *Williams* v. *Resolution GGF Oy*, 417 Mass. 377, 383 (1994); *Pilok* v. *Bednarski*, 230 Mass. 56, 58 (1918). Therefore, at law, the fact that the defendant was both buyer and seller of the property has no effect on the obligation of the defendant to conform to its statutory duty and relinquish any surplus to the plaintiff.

The defendant claims that it is entitled to equitable relief because it made a mistake when it instructed its agent to bid $180,000 at·the foreclosure sale. To support its argument the defendant cites an unreported Federal District Court case, Rubin *vs.* Federal Home Loan Mtge. Corp., U.S. Dist. Ct., No. 94-10846-DPW (D. Mass. 1985). In that case, the mortgagee bid more than it was owed on some property because of a "technical" error. The judge characterized the error as bilateral, finding that the "only interested parties . . . suffered from a shared but mistaken understanding." In this case, however, the mistake

"The holder of a mortgage of real estate, or his representatives, out of the money arising from a sale under the power of sale shall be entitled to retain all sums then secured by the mortgage, whether then or thereafter payable, including all costs, charges or expenses incurred or sustained by him or them by reason of any default in the performance or observance of the condition of the mortgage or of any prior mortgage, rendering the surplus, if any, to the mortgagor . . . ."

was a unilateral mistake by the defendant.[4] Unlike the Rubin case and cases where we have set aside or reformed the terms of a sale, see, e.g., *Brooks* v. *Bennett*, 277 Mass. 8, 16 (1931); *Chute* v. *Cronin*, 273 Mass. 471, 474 (1930), here there was no mutual confusion as to the sale price or terms of the sale. The mortgagee, of its own accord, relied on what it claimed was an incomplete and inaccurate appraisal it had commissioned. Then, once it became aware of its misplaced reliance, it failed to pursue the proper remedy of seeking, in equity, a new sale.[5] Instead, it affirmed the foreclosure sale by selling the property to a third party. Increasing the magnitude of the mistake (and additionally weighing against the defendant's equitable claim) is the fact that the defendant had a heightened duty to conduct a sale in good faith and with due care. Relying on an allegedly faulty appraisal to set the price of the property and then failing to notify the mortgagor of the mistake falls short of the duty to take reasonable precaution for the protection of the mortgagor. Having thus failed in its duty, the defendant should not be heard in equity to claim relief from its own error.

This conclusion is consistent with sound public policy, because permitting a mortgagee to change the purchase price after the completion of the foreclosure sale would have a deleterious effect on the foreclosure process. Allowing the judgment below to stand "would create a situation where bidders would be understandably reluctant to bid at foreclosure sales

[4]The motion judge seems to take it as a given that because the "bid was based on an inadvertent, mistaken instruction to attorneys involved with the bidding," the bid was a "mistake" as a matter of law. We believe that this is a faulty conclusion. That the defendant transmitted the wrong instructions to its agent is not conclusive of whether a mistake, in the legal sense, was made, or whether relief should be granted. See *Barrell* v. *Britton*, 252 Mass. 504, 508 (1925) ("It is well settled that to entitle a party to a contract to have it reformed on the ground of a mistake, it must appear that the mistake was mutual. Proof of mistake by one of the parties only is not sufficient"); *Maloney* v. *Sargisson*, 18 Mass. App. Ct. 341, 345 (1984) ("Mutual mistake is one of those familiar legal principles which is easier to state than to apply. Our cases, as we observed in *Covich* v. *Chambers*, 8 Mass. App. Ct. 740, 749 [1979], are substantially in accord with the articulation made in Restatement [Second] of Contracts § 152 [1979] which provides: '[1] Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake . . . ' ").

[5]The proper remedy for a mistake is to seek a new sale in equity. See *Goldman* v. *Damon*, 272 Mass. 302, 305-306 (1930).

because of a fear that the sale would later be rescinded by the seller." *Greenwood Credit Union* v. *Fleet Nat'l Bank,* 675 A.2d 415, 416 (R.I. 1996).

2. *The plaintiff's G. L. c. 93A claim.* The plaintiff seeks additional relief under the provisions of G. L. c. 93A, §§ 9 and 11. Both sections authorize a judge to award multiple damages and attorney's fees if the judge finds that the defendant wilfully and knowingly violated the statute by employing an unfair or deceptive business practice. See *Heller* v. *Silverbranch Constr. Corp.,* 376 Mass. 621, 627-629 (1978). Unfairness under G. L. c. 93A is determined from all the circumstances. See *Martin* v. *Factory Mut. Research Corp.,* 401 Mass. 621, 623 (1988); *Swanson* v. *Bankers Life Co.,* 389 Mass. 345, 349 (1983); *Hogan* v. *Riemer,* 35 Mass. App. Ct. 360, 370 (1993) (Brown, J., dissenting). A practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted. *Grossman* v. *Waltham Chem. Co.,* 14 Mass. App. Ct. 932, 933 (1982). See *Purity Supreme, Inc.* v. *Attorney Gen.,* 380 Mass. 762, 778-779 (1980). However, a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made. See *Kobayashi* v. *Orion Ventures, Inc.,* 42 Mass. App. Ct. 492, 505 (1997); *Framingham Auto Sales, Inc.* v. *Workers' Credit Union,* 41 Mass. App. Ct. 416, 418 (1996).

The plaintiff argues that the pleadings and the admissions of facts and documents demonstrate that the defendant's refusal to provide an accounting, and its refusal to pay the surplus, were intentional, wilful, and deliberate violations of G. L. c. 183, § 27.[6] We disagree. From the record, it appears that the defendant and the plaintiff had a genuine difference of opinion about whether there was a surplus, making this "an ordinary . . . dispute without conduct that was unethical, immoral, oppressive, or unscrupulous." *Kobayashi, supra,* citing *Levings* v. *Forbes & Wallace, Inc.,* 8 Mass. App. Ct. 498, 504 (1979). There is nothing in the record to indicate that the defendant

---

[6]The plaintiff also cites *In re Myers,* 175 B.R. 122, 127-129 (Bankr. D. Mass. 1994), to suggest that a statutory violation is a per se violation of G. L. c. 93A. In *Myers,* the court held that a plaintiff who alleged a valid claim under G. L. c. 140D had also alleged a valid claim under c. 93A. This conclusion was based on G. L. c. 140D, § 34, which provides that "[a] violation of [G. L. c. 140D] . . . shall constitute a violation of chapter ninety-three A." *Myers* is not applicable here because there is no similar provision contained in G. L. c. 183.

acted unfairly. Moreover, the defendant did not deceive the plaintiff in any way. It simply held a different opinion as to the applicability of G. L. c. 183, § 27, to the undisputed facts that necessitated the involvement of the court. Therefore, we conclude that the plaintiff's c. 93A claim is without merit.

The order granting summary judgment on behalf of the defendant is vacated. On remand, with respect to the disposition of the surplus, summary judgment shall enter for the plaintiff. With respect to the plaintiff's c. 93A claim, because there was no showing that the defendant engaged in unfair or deceptive business practices, summary judgment shall enter for the defendant.

*So ordered.*