WILSAR RODRIGUEZ & another[1] *vs.* FIRST UNION NATIONAL BANK, trustee.[2]

No. 03-P-511.

Essex. February 24, 2004. - July 6, 2004.

Present:. DOERFER, COHEN, & MILLS, JJ.

*Mortgage,* Foreclosure, Insurance. *Insurance,* Fire. *Unjust Enrichment. Abandoned Property.*

This court concluded that a Superior Court judge properly determined that the plaintiffs, who had granted a mortgage on their home to the defendant's predecessor in interest, were entitled to the portion of the proceeds from fire insurance on the property that exceeded the debt balance on the property, upon which the defendant had foreclosed, where the defendant's purchase of the property at a foreclosure sale that took place prior to the insurance company's payment under the fire insurance policy reduced the debt balance by the amount of the sale proceeds, and thus reduced the defendant's ·entitlement to the insurance proceeds to that same extent [440-442]; moreover, this court found no merit in the arguments that the plaintiffs would be unjustly enriched by receiving the surplus insurance proceeds [442-444] or that they had waived their right to those proceeds [444].

CIVIL ACTION commenced in the Superior Court Department on May 3, 2000.

The case was heard by *S. Jane Haggerty*, J., on motions for summary judgment.

*Paul Michienzie* for the defendant.

*Seth H. Hochbaum* for the plaintiffs.

MILLS, J. The plaintiffs, Wilsar Rodriguez and Alejo Gomez, seek proper· accounting with respect to fire insurance proceeds paid to the defendant, First Union National Bank, trustee. On

[1]Alejo Gomez.

[2]First Union National Bank accepted the assignment of the mortgage at issue in this ҫase as "Trustee." Further details are not apparent in the record before us.

cross motions for summary judgment, a Superior Court judge determined that the plaintiffs were entitled to a portion of the insurance proceeds. The essential facts are not in dispute.

1. *Background.* The plaintiffs purchased a home (the property) in October, 1997, and paid $98,000. In connection with the purchase, they granted a mortgage to the defendant's predecessor in interest, Option One Mortgage Corporation (Option One), for $78,000. The mortgage required the plaintiffs to insure the property against hazards, including fire, and provided that Option One had the right to obtain insurance coverage if the plaintiffs failed to do so. Paragraph five of the mortgage provides in part:

> "Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender."

> \* \* \*

> "If under paragraph 21 [of the mortgage] the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition."

Paragraph twenty-one of the mortgage provides, in part: "If Lender invokes the STATUTORY POWER OF SALE . . . [t]he proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it."

The plaintiffs' insurance policy lapsed on October 31, 1998, and was not renewed. Option One purchased an insurance policy for the property retroactive to July 1, 1998, and assessed the premium to the plaintiffs' loan. Option One renewed this policy on October 31, 1999. On November 22, 1999, the property was damaged by fire, and both the plaintiffs and Option One submitted insurance claims, although the plaintiffs only sought $10,000 for the contents of the house.

2. *Entitlement to insurance proceeds.* Option One subsequently assigned the mortgage to the defendant. The plaintiffs' loan was in arrears, and the defendant notified the plaintiffs of their delinquent status. On May 4, 2000, the defendant foreclosed on the property.[3] At this time, the amount due and owing on the mortgage was $83,053.79. The defendant purchased the property at the foreclosure sale for $69,700, which reduced the plaintiffs' indebtedness from $83,053.79 to $13,353.79. This conclusion derives ample support from numerous decisions rendered by the Supreme Judicial Court and this court. See, e.g., *Duclersaint* v. *Federal Natl. Mort. Assn.,* 427 Mass. 809, 810-811 (1998) (a mortgagee's purchase of a property at a foreclosure sale is not merely a "paper transaction" despite the fact that "no real funds [are] ever realized by [the mortgagee]"); *Ideal Financial Servs., Inc.* v. *Zichelle,* 52 Mass. App. Ct. 50, 61 (2001), quoting from *Charlestown Five Cents Sav. Bank* v. *White,* 30 F. Supp. 416, 418-419 (D. Mass. 1939) ("When the . . . [mortgagee] bought at the foreclosure sale and gave a deed to itself, it . . . became responsible for the application of the purchase price as though it had received it upon a foreclosure sale to a stranger, and it was bound to apply it to the payment of the mortgage debt.") After the foreclosure sale, the insurance company paid $78,934.83 to the defendant on the defendant's claim under the hazard insurance policy.

The judge correctly calculated that the defendant was owed $83,053.79 before the foreclosure sale, bought the property for

---

[3]In response to notice of the foreclosure action, the plaintiffs requested an adjournment of the foreclosure sale on the basis that sufficient funds were expected to be available from the insurance claims in order to pay off the mortgage. In an additional effort to prevent the foreclosure sale, the plaintiffs filed a motion for preliminary injunction concurrent with the filing of the complaint in this action. The plaintiffs' motion was denied.

$69,700 at the foreclosure sale (extinguishing the debt by that amount), and should receive $13,353.79 from the insurance proceeds to satisfy the debt balance. She correctly ruled that the surplus of $65,581.04 in insurance proceeds should be paid to the plaintiffs.

As the judge correctly observed, the purpose of a mortgage is to provide security for payment of the mortgage debt. See *Ideal Financial Servs., Inc., supra* at 61. See also *Natick Five Cents Sav. Bank* v. *Bailey*, 307 Mass. 500, 501 (1940) (a mortgage is given to secure the performance of the mortgagor's obligation on the note). The mortgagee cannot recover and retain insurance proceeds under the policy in excess of the debt secured by the mortgage. See *Ben-Morris Co.* v. *Hanover Ins. Co.*, 3 Mass. App. Ct. 779, 779 (1975), quoting from *Attleborough Sav. Bank* v. *Security Ins. Co.*, 168 Mass. 147, 149 (1897) ("The interest of the mortgagee under the fire policy is 'the amount which may be due the mortgagee on the mortgage debt' "); *Lembo* v. *Parks*, 6 Mass. App. Ct. 850, 851 (1978) ("the mortgagee is insured only to the extent of the mortgage debt"); *Ideal Financial Servs., Inc., supra* at 61 (a mortgagee has "an insurable interest in the insured premises that is limited to the extent that the property secures the debt"). The defendant's interest under the policy " 'was intended to provide for a diminution . . . by the reduction, by payment or otherwise, of the amount of the debt.' " *Ben-Morris Co., supra* at 779, quoting from *Attleborough Sav. Bank, supra*. Once the plaintiffs' debt was reduced by application of $69,700 in sale proceeds from the foreclosure sale, the defendant's entitlement to recover and retain the insurance proceeds was extinguished to that extent. *Duclersaint, supra* at 811-812.

The defendant, focusing upon paragraph five of the mortgage in isolation, argues that it is entitled to insurance proceeds up to $83,053.79, the amount owing under the mortgage just before the foreclosure sale occurred. The defendant further maintains that the proceeds of the foreclosure sale are independent of this language, and are therefore irrelevant. Even were we to accept the defendant's argument regarding its entitlement to the insurance proceeds, however, we would conclude that the plaintiff is due a payment in the amount claimed. The defendant's right to

retain insurance proceeds does not eliminate its obligation to apply those proceeds to the secured debt, and to account for them to the plaintiff. Accordingly, the defendant's receipt and retention of $78,934.83 in insurance proceeds would operate to reduce the outstanding mortgage debt secured by that amount, leaving a remaining balance of $4,118.96. The additional proceeds from the foreclosure sale exceeded the remaining balance, and the plaintiffs are entitled to that excess, which is the amount claimed. As we have noted, the purpose of a mortgage is to secure a debt. Once the creditor has been satisfied, amounts in excess of the debt should be returned to the mortgagor. We are not persuaded otherwise by the defendant.

3. *Unjust enrichment.* Despite conceding, as it must, that its purchase of the property from itself was not merely a "paper transaction," the defendant argues that the plaintiffs were unjustly enriched by the judge's decision in their favor. We disagree and note that any other result would unjustly enrich the defendant.

The defendant wishes to retain the $69,700 in foreclosure proceeds and the $78,934.83 in insurance proceeds, totaling $148,634.83, although the outstanding debt on the mortgage was only $83,053.79. The defendant knowingly bid on fire-damaged property. Compare *Fireman's Fund Mort. Corp.* v. *Allstate Ins. Co.*, 838 P.2d 790, 797 (Alaska 1992) (holding that mortgagee was entitled to seek reformation of the foreclosure sale contract for mutual mistake where neither mortgagor nor mortgagee had actual or constructive notice of damage that occurred only hours before the foreclosure sale, but ruling, in the absence of reformation, that mortgagee-buyer was entitled to no more in insurance proceeds than the mortgagor's outstanding debt after foreclosure, i.e., the deficiency). The defendant's foreclosure bid represented the price it was willing to pay for the property in its damaged condition. See *Duclersaint, supra* at 812-813. The insurance proceeds represent the difference between the value of the undamaged property and the value of the damaged property. After satisfying the deficiency, the mortgagee should not be permitted to keep excess proceeds for the undamaged property, which it did not bid upon. A North Carolina court explained:

"[C]ourts emphasize the sequence of events. They distinguish between foreclosure-after-loss and foreclosure-before-loss. When insured property is damaged *prior* to foreclosure, courts allow the purchasing mortgagee to retain under the mortgage clause those proceeds amounting to any deficiency after foreclosure. The mortgagor recovers the remainder of the proceeds. The courts conclude that once the deficiency is satisfied, the mortgagee's additional recovery of proceeds representing undamaged property would amount to unjust enrichment since its bid represented the value of the *damaged* property." (Emphasis in original.)

*Tech Land Dev., Inc.* v. *South Carolina Ins. Co.*, 57 N.C. App. 566, 569 (1982) (internal citations omitted). See *Nationwide Mut. Fire Ins. Co.* v. *Wilborn*, 291 Ala. 193, 199 (1973) ("in the [foreclosure after loss situation], to allow recovery of insurance proceeds by the mortgagee after full satisfaction of the debt would amount to mortgagee's unjust enrichment").

According to *Duclersaint, supra* at 812, "the value of property [was] set conclusively by the final bid accepted at the foreclosure sale." See *Whitestone Sav. & Loan Assn.* v. *Allstate Ins. Co.*, 28 N.Y.2d 332, 337 (1971) ("To allow the mortgagee, after effectively cutting off or discouraging lower bidders, to take the property — and then establish that it was worth less than the bid — encourages fraud, creates uncertainty as to the mortgagor's rights, and most unfairly deprives the sale of whatever leaven comes from other bidders. Mortgagees have the obvious opportunity to bid only so much of the debt as equals the value of the property, and if someone else wishes to bid the same or more, so much the better for every other party concerned with the property"). Thus, as matter of law, the value of this property was $69,700 at the time of foreclosure, in its fire-damaged state.[4] Adding to this the value of the insurance proceeds of $78,934.83, it would appear that the property value

---

[4]Mortgagees are bound to exercise the utmost good faith and due care in making foreclosure bids. *Duclersaint, supra* at 812, 813, citing *Crane* v. *White*, 215 Mass. 478, 480 (1913); *Pilok* v. *Bednarski*, 230 Mass. 56, 58 (1918); *Williams* v. *Resolution GGF Oy*, 417 Mass. 377, 383 (1994). It is not our concern how the defendant determined what to bid on the property, so long as there are no indicia of bad faith or carelessness toward the mortgagor's

prior to the fire approximated $148,634.83, suggesting that the property had appreciated while held by the mortgagor. Any such appreciation over and above the indebtedness must accrue to the mortgagor. To permit the mortgagee to retain the appreciation would be to permit its unjust enrichment.

The reality of this case, however, is that there is no real indication that the property had appreciated at all. Instead, for reasons not apparent from the record, the defendant seems to have made an unusually high bid for property that it knew had been made uninhabitable by fire. If anything, although the defendant does not so argue, it appears that the defendant mistakenly bid more than the property was worth in its damaged condition at the time of sale. Like the court in *Duclersaint,* *supra* at 812-813, however, we will not hold a mortgagee's unilateral mistake against the mortgagor. Since we will not permit the mortgagee to recover more than full satisfaction of the mortgage debt, the required result is to award the excess proceeds to the mortgagor.

4. *Additional claims.* The defendant argues that the plaintiffs waived their right to the insurance proceeds by failing to file a claim or by abandoning the property. The defendant also claims that it, as the only named payee on the policy, was entitled to the proceeds. The defendant's arguments do not persuade us to alter the basic requirement that the plaintiffs receive a proper accounting of their mortgage balance in view of the amounts collected by the defendant from the foreclosure sale and the insurer.

The judgment is affirmed.

*So ordered.*

---

interests. Especially where the court has not been called upon to consider reformation of the foreclosure sale contract, we will not look behind that bid.