ECOLOGICAL FIBERS,
INC., Plaintiff,

v.

KAPPA GRAPHIC BOARD,
B.V., Defendant.

No. CIV.A. 03–40159–NMG.

United States District Court,
D. Massachusetts.

Sept. 30, 2004.

Michael P. Angelini, Bowditch & Dewey, LLP, Worcester, MA, for Kappa Graphic Board, B.V., Counter Claimant.

Stanley G. Barr, Kaufman & Canoles, Norfolk, VA, for Kappa Graphic Board, B.V., Defendant.

Johan R. Conrod, Jr., Kaufman & Canoles, Norfolk, VA, for Kappa Graphic Board, B.V., Defendant.

David R. Schaefer, Brenner, Saltzman, & Wallman, LLP, New Haven, CT, for Ecological Fibers, Inc., Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiff Ecological Fibers, Inc. ("Ecological") has brought this action alleging that defendant Kappa Graphic Board B.V. ("Kappa") breached a contract between the parties in bad faith and that the breach constituted an unfair business practice in violation of M.G.L. c. 93A. Kappa now moves to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

## I. Factual Background

Defendant Kappa manufactures "graphic boards" used to bind books and Ecological buys, "converts," i.e. cuts them to custom sizes, and resells them throughout North America. On June 28, 2000 the parties entered into an Asset Purchase Agreement whereby Kappa agreed to purchase Ecological's conversion equipment and Ecological agreed to train Kappa employees to use that equipment.

On July 7, 2000 the parties entered into a separate Sales Agency Agreement ("the Agreement") whereby Kappa appointed Ecological as its exclusive independent graphic board sales agent in certain territories in the United States and Canada. The Agreement expires on June 30, 2005. The purpose of the Agreement, according to Ecological, was to prevent Kappa from competing with Ecological for the sale of graphic boards in its territory now that Kappa controls all aspects of the business as a result of the Purchase Asset Agreement.

On June 30, 2003 Kappa gave Ecological written notice that it intended to terminate the Agreement on July 30, 2003. Kappa alleges that Ecological breached Section 9 of the Agreement by failing to meet certain "budget tonnage" requirements set forth therein and Section 7(a) of the Agreement by failing to make reasonable efforts to promote Kappa's products in the marketplace. Ecological denies the allegations and claims that Kappa has, by virtue of its recent actions, breached the Agreement itself. Ecological also contends that Kappa never intended to fulfill its obligations under the Agreement for the five-year term and that it has, therefore, engaged in unfair and deceptive business practices in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A ("the 93A claim"). Ecological seeks injunctive relief, compensatory and punitive damages and attorneys' fees.

On July 25, 2003 this Court denied by endorsement Ecological's ex parte motion for a temporary restraining order (Docket No. 4) which sought to compel Kappa to perform under the terms of the Agreement. The parties then appeared before this Court on August 12, 2003 at oral argument of Ecological's motion for a preliminary injunction.

On September 4, 2003 this Court denied Ecological's motion for a preliminary injunction (Docket No. 11), finding that none of the prerequisites for injunctive relief had been met. Kappa now moves to dismiss Count II (the 93A claim) of the complaint.

## II. *Legal Analysis*

### A. Standard of Review

A court may not dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Judge v. City of Lowell*, 160 F.3d 67, 72 (1st Cir.1998)(quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd*, 248 F.3d 1127 (1st Cir.2000). Further, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollett*, 83 F.Supp.2d at 208.

### B. Analysis

■ In Massachusetts, the Consumer Protection Act provides a private cause of action for victims of unfair business practices. *See* M.G.L. c. 93A § 2, 11; *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 474, 583 N.E.2d 806 (1991). Section two of Chapter 93A states, "[u]nfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *Id.* § 2(a). To determine whether a practice is unfair, the court focuses on "the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making [an unfairness determination]." *Massachusetts Employers Insurance Exchange v. Propac–Mass, Inc.,* 420 Mass. 39, 42, 648 N.E.2d 435 (1995).

■ In some cases the facts giving rise to a breach of contract claim will also give rise to a 93A claim. *See id.* However, in order for a 93A claim to succeed, the law requires more than a mistake or honest dispute concerning a contract. *Duclersaint v. Federal National Mortgage Association,* 427 Mass. 809, 814, 696 N.E.2d 536 (1998). Some level of bad faith must be present. *Anthony's Pier Four,* 411 Mass. at 474–75, 583 N.E.2d 806. The Massachusetts Supreme Judicial Court has provided guidance as to the misbehavior by a contracting party that will properly invoke Chapter 93A. *Propac–Mass,* 420 Mass. at 42, 648 N.E.2d 435; *Anthony's Pier Four,* 411 Mass. at 475, 583 N.E.2d 806.

In *Propac–Mass,* an unincorporated insurance exchange ("the Exchange") made a 5-year agreement with Propac for Propac to serve as the Exchange's attorney-in-fact. 420 Mass. at 40, 648 N.E.2d 435. At the end of the term, an advisory committee of the Exchange gave notice to Propac that the agreement would not be renewed. *Id.* Propac, instead of honoring the termination, began a campaign to maintain its office and inhibit an orderly transition to a new attorney-in-fact. *Id.* That campaign included contacting the subscribers to the Exchange and informing them that their insurance would be in jeopardy if they cooperated with the signing of a new power of attorney. *Id.* The

court ruled that the facts gave rise to 93A liability, finding persuasive the fact that Propac had jeopardized the Exchange's subscribers. *Id.* at 43, 648 N.E.2d 435.

Similarly in *Anthony's Pier Four,* HBC Associates ("HBC") contracted with Anthony's Pier Four, Inc. ("Anthony's") for the joint development of two piers on South Boston's harborfront. 411 Mass. at 455, 583 N.E.2d 806. Anthony's contracted to sell one pier to HBC and to develop the other itself but to retain approval rights over HBC's development plan. *Id.* Anthony's agreed not to withhold such approval unreasonably. *Id.* HBC then spent over four years developing the pier. *Id.* at 455–63, 583 N.E.2d 806. At that point, Anthony's concluded that it had made a poor deal, began to demand more money and summarily denied all requests by HBC for approval of plans. *Id.* at 460–62, 583 N.E.2d 806. Both parties filed suit. The court found 93A liability because Anthony's had failed to deal in good faith with HBC concerning the development plan approval. *Id.* at 474, 583 N.E.2d 806 ("conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act . . . .").

■ In the present dispute, the complaint alleges that "Kappa, at the time that it entered into the Agreement, never intended to carry out the terms of such agreement for the full five year duration . . . ." Instead, Ecological alleges, Kappa fraudulently entered into and terminated the agreement for the purpose of "contacting and soliciting Ecological's customers."

The complaint, on its surface, states a 93A claim. As in *Anthony's Pier Four,* here plaintiff has alleged that defendant acted "in disregard of [a] known contractual arrangement" by unjustifiably terminating a contract prematurely in order to lure clients away from plaintiff. *See* 411 Mass. at 474, 583 N.E.2d 806. Moreover, Eco-

**16**

logical goes beyond the allegations present in *Anthony's Pier Four* by alleging that Kappa never even intended to perform the agreement at the time of contracting. *See id.* Such deceitful tactics, if proven, could give rise to 93A liability. *See id.*

Kappa argues that the present case is a "simple breach of contract," and thus Chapter 93A is inapplicable. It cites *Duclersaint* for the proposition that a good faith contract dispute does not give rise to a 93A claim. Although Kappa's statement of law is correct, *Duclersaint* is distinguishable from this case. In that case, there was no allegation that the defendant entered into the contract with fraudulent motives, merely that the defendant later refused to complete its contractual obligations due to a "good faith dispute." *Duclersaint*, 427 Mass. at 814, 696 N.E.2d 536 ("plaintiff had a genuine difference of opinion ... there is nothing in the record to indicate that defendant acted unfairly."). In contrast, Ecological alleges that the contract was both made in bad faith and later terminated fraudulently.

On a motion to dismiss, a court is obliged to accept the allegations of the complaint as true. *Langadinos*, 199 F.3d at 69. This case may well prove to be a "simple contract dispute," but taking Ecological's allegations on face value, a 93A claim has been properly stated. For that reason, Kappa's motion must be denied.

**ORDER**

In accordance with the foregoing, Kappa's motion to dismiss (Docket No. 15) is **DENIED**. In its motion, Kappa also requested attorney's fees for services rendered in connection with that motion. Under the circumstances, that request is **DENIED**.

So ordered.