Lauriat, Peter M., J.
This action arises from a failed business relationship between the plaintiff, Vantage Travel Service, Inc. (“Vantage”), and the defendant, Adobe Systems, Inc. (“Adobe”). Adobe has now moved to dismiss Vantage’s complaint, pursuant to Mass.R.Civ.Pro. 12(b)(6), for failure to state a claim against it upon which relief could be granted. For the following reasons, Adobe’s motion is denied.
BACKGROUND
In January 2011, Adobe and Vantage entered into a contract whereby Adobe was to deliver software development products and services in connection with the redesign of Vantage’s website. The terms of the agreement pertaining to Adobe’s web content management services were set out in a “Master Services Agreement,” which contained an incorporation clause for contemplated future amendments. The Master Services Agreement was supplemented by a subsequent “Statement of Work,” which was executed on March 14, 2011, and which stated that it was incorporated into the Master Services Agreement.
Under the Statement of Work, Adobe was to “perform all services and provide all deliverables under this [Statement of Work] on a Time and Materials basis for estimated fee of $397,000" based on an estimate of 1,940 hours of work required. The Statement of Work also provided that ’’the initial targeted delivexy date assuming a start date of Jan. 31 st is June 30th 2011." Further, the Statement of Work included a provision that “all services are provided on a Time and Materials Basis and do not, in any way, represent a Fixed or Not-to-Exceed Price. The above hours listed are estimates, actual hours incurred will be billed on a monthly basis. If additional hours are required, Adobe will follow the change order process.” In addition to the above agreements, the parties executed a “Purchase Authorization Letter,” under which Vantage agreed to pay $236,000 for software products and services.
Vantage alleges that issues arose almost immediately due to Adobe’s inability to perform its obligations. After failing to meet expectations under the Statement of Work for June and July, an Adobe representative informed Vantage that Adobe would no longer provide services under the Statement of Work unless Vantage committed to an additional 1,020 hours for an increase in fees of $198,000. Following discussions, the parties agreed that the deliverables discussed in the Statement of Work would remain the same and that Vantage would provide Adobe with an additional $62,497 to complete its work. This agreement was laid out in a “Change Request Form,” which stated that it constituted an amendment to the Statement of Work. The Change Request provided that “the total funds allocated towards the scope defined in SOW 1 and this Change Request are $459,497.92. Adobe will not exceed billing beyond this amount without prior approval by Customer and execution of a further Change Request. All other SOW terms regarding time and materials, additional change management, payment terms, et cetera, remain in effect
In September 2011, Adobe provided Vantage with a project timeline indicating a delivered end product by January 20, 2012. Vantage alleges that Adobe continually failed to achieve the milestones set out by the *126 timeline, and in December, Adobe again informed Vantage that Adobe required additional funding ($109,250) because more hours were needed. Finally, Vantage claims that Adobe communicated that it expected full payment at the end of January despite having failed to complete its services.
Vantage filed this action on January 10, 2012, asserting claims for unfair and deceptive business practices in violation of G.L.c. 93A (Count I), breach of contract (Count II), and breach of the implied covenant of good faith and fair dealing (Count III).
DISCUSSION
In order to withstand a motion to dismiss, a plaintiffs complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement . . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, the plaintiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006).
Adobe first argues that the explicit language of the Master Services Agreement, Statement of Work, and Change Request constitute a wholly integrated contract and require the conclusion that Adobe never breached its contract with Vantage. In particular, Adobe points to the provision in the Master Services Agreement that states “for time and materials engagements, the services will be deemed accepted as performed,” and the provision in the Statement of Work that states “all services are provided on a Time and Materials Basis and do not, in anyway, present a Fixed or Not-To-Exceed Price .. .” Vantage argues that these provisions are inapplicable because the “time and materials” language originally contemplated by Adobe was removed from the final draft of the “Cost Impact” provision of the later established Change Request. Further, the Change Request refers to the “total funds defined in SOW1.” According to Vantage, this converted the work into a fixed-price engagement rendering it subject to the “professional and workmanlike” performance requirement of the Master Services Agreement. Thus, Vantage asserts that either the agreement changed its terms explicitly, or at the very least, it left room for ambiguity in the contract’s interpretation. As the Master Services Agreement indicates, the contract is to be governed by California law because Adobe’s principle place of business is Santa Clara, California.
“In ruling on the matter of parol evidence and the preliminary issue of integration, a court must consider such factors as the language and completeness of the written agreement and whether it contains an integration clause . . .” Marani v. Jackson, 183 Cal.App.3d 695, 702 (1986), quoting Brawthen v. H&R Block, Inc., 52 Cal.App.3d 139, 146 (1975). Further, “[t]he goal of contract interpretation is to ascertain the parties’ mutual intent at the time of contracting. The mutual intent of the parties is determined by the words used in the agreement, which are to be understood in their ordinary and popular sense .. . The trial court should consider [ ] extrinsic evidence even if the language of the contract could be considered unambiguous on its face.” Galardi Group Franchise & Leasing, LLC v. City of El Cajon, 196 Cal.App.4th 280, 287 (2011), citing Morey v. Vannucci, 64 Cal.App.4th 904, 912 (1998).
The fact that the contract language largely favors one parly is also considered in a breach of contract claim under California law. “[Wjhere a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing.” Kendall v. Ernest Pestana, Inc., 40 Cal.3d 488, 500 (1985), quoting Cal. Lettuce Growers v. Union Sugar Co., 45 Cal.2d 474, 484 (1955). “A contracting party’s discretionary power to vary the price or other performance does not render the agreement illusory if the party’s actual exercise of that power is reasonable.” Perdue v. Crocker National Bank, 38 Cal.3d 913, 923 (1985), quoting Powell v. Central Cal. Fed. Sav. & Loan Ass’n, 59 Cal.App.3d 540, 549 (1976).
Based on California’s broad allowance for extrinsic evidence in contract interpretation, Vantage has alleged facts that support a plausible claim for breach of contract. The emails communicating that Vantage wanted to convert to a fixed price contract and insistence on the removal of certain “time and materials” language suggest that, in executing the Change Request, Vantage intended to incorporate this preference into the contract. Furthermore, even if, as Adobe argues, the contract remained uncapped and based only on “time and materials,” Adobe’s open-ended discretion in dictating the number of hours of work required would be subject to a reasonable exercise of that power. Based on' the limited record before the court and the reasonable inferences to be drawn therefrom, Vantage’s claim for a breach of contract survives a motion to dismiss.
Adobe next argues that Vantage cannot claim a breach of an implied covenant of good faith and fair dealing because Vantage did not demonstrate that Adobe acted in a way that frustrated its rights under the agreement. Under California law, “the implied covenant of good faith and fair dealing does not extend beyond the terms of the contract at issue.” Poway Royal Mobilehome Owners Ass’n v. City of Poway, 149 Cal.App.4th 1460, 1477 (2007). At the same time, *127 “[the] covenant [of good faith and fair dealing] not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose.” Pasadena Live, LLC v. City of Pasadena, 114 Cal.App.4th 1089, 1093 (2004), quoting Harm v. Frasher, 181 Cal.App.2d 405, 417 (1960) (internal quotations omitted). Similarly, “the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party’s rights to the benefits of the contract.” Racine & Laramie, Ltd. v. Department of Parks & Recreation, 11 Cal.App.4th 1026, 1031 (1992), quoting Love v. Fire. Ins. Exchange, 221 Cal.App.3d 1136, 1153 (1990).
Adobe essentially argues that, because the contract expressly provides that “services will be deemed accepted as performed” and no specific promises were made as to the number of hours that would be required to complete its work (just estimates), Vantage has no protection under the contract for a claim of breach of an implied covenant. However, under this interpretation, Adobe would be permitted to continually extend the number of hours required and would have little, if any, motivation to perform the work in an efficient manner so long as it regularly invoked the “Change Request Process.” As discussed above, California law provides for an implicit requirement of reasonableness in situations where one party is able to exercise significant discretion. Considering the exceptional delay that allegedly persisted, Adobe’s reliance on its favorable contract terms do not protect it from an inference that it acted in a way to frustrate Vantage’s position. Based on Vantage’s explanation of the facts corresponding to the services being performed under the contract and reasonable inferences to be drawn therefrom, Vantage has set forth allegations plausibly suggesting an entitlement to relief on its breach of implied covenant of good faith and fair dealing claim.
Adobe’s final argument is that Vantage’s claim under c. 93A must fail because Vantage is simply alleging a failure to perform under a contract, which does not rise to the level of unfair and deceptive practices. Adobe relies on the principle that “a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made.” Daclersaint v. Federal Nat. Mortg. Ass’n., 427 Mass. 809, 814 (1998). However, it is also important to note that “unfairness under G.L.c. 93A is determined from all the circumstances.” Id. And further, “a practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted.” Id. In addition, “use of a breach of contract as a lever to obtain advantage for the party committing the breach in relation to the other party; i.e., the breach of contract has an extortionate quality that gives it the rancid flavor of unfairness.” Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226 (1992).
Vantage alleges practices based on Adobe’s overall performance under the contract that extend beyond a good faith dispute over what is owed between the parties, as Adobe suggested. If, as Vantage alleges, Adobe persistently took advantage of its open-ended contract terms to act in bad faith, the discrepancy may be the product of unfair or deceptive practices. Considering the facts in the light most favorable to Vantage, it has stated a plausible a claim under c. 93A.
ORDER
For the forgoing reasons, the Defendant’s Motion to Dismiss is DENIED.